COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia


KEVIN N. HARGRAVES
                                              OPINION BY
v.    Record No. 2543-00-2          JUDGE ROSEMARIE ANNUNZIATA
                                           JANUARY 15, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
               E. Everett Bagnell, Judge Designate

          David M. Gammino for appellant.

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Kevin N. Hargraves appeals his conviction for possession of

cocaine with intent to distribute in violation of Code

§ 18.2-248.  He contends the trial court's denial of his motion

to suppress certain evidence violated his rights under the

Fourth Amendment and that the evidence was insufficient to

support a finding of guilt beyond a reasonable doubt.  For the

reasons that follow, we reverse and remand.

                             I.

                         Background

     On appeal, we review the evidence in the light most

favorable to the Commonwealth, the party prevailing below.  Reid

v. Commonwealth, 256 Va. 561, 564, 506 S.E.2d 787, 789 (1999)

(citations omitted).  At the time of the incident, Kevin

Hargraves lived in a residence owned by his girlfriend, Nikia Glasper. Glasper had a contract with ADT Security to protect her home. The contract required ADT to contact the police and Glasper if the alarm sounded. Glasper testified that nothing in the contract allowed the police to enter her home, inventory the home, or analyze the crime scene.

On September 15, 1999, at 10:01 p.m., Hopewell patrolman James E. Jackson received a call from dispatch regarding a report from ADT Security. Jackson was told that the burglary alarm at the residence had been activated.

Officers Jackson and Norsworthy responded to the location of the home within six minutes and found the alarm still sounding. They found that the rear door had been broken open. After they secured the exterior of the premises, they called for a K-9 unit. The officers put the dog inside the home. His immediate return signified that no one was inside and that the residence was secure.

Jackson and Norsworthy thereupon entered the home. They observed that the back doorjamb was splintered and that the rear bedroom had been ransacked. Although they found Glasper's name on something they found in the home, they did not contact her.

The police had not received permission to investigate the interior of the home from the security company, Glasper, or Hargraves. Nevertheless, Jackson embarked on a "crime scene investigation," in which he methodically dusted for

fingerprints, took photographs and "look[ed] for any evidence." Although the master bedroom was the only area that appeared to be disturbed, he "dusted for latent fingerprints throughout the entire residence . . . ." In the bedroom, he saw that some drawers were open, clothes were on the floor, and the mattress had been pulled to one side. He opened a drawer located on the right side of the bed's headboard and dusted it for fingerprints. He also opened a drawer on the left side for the same purpose.

Inside the left drawer he observed a clear plastic bag with a white substance, two sacks of money, an electronic scale and some plastic baggies. The items later proved to be 56.9 grams of cocaine, $1,110 in cash, a Virginia identification card belonging to Hargraves, an electronic scale, and plastic baggies.

When Glasper arrived home from work at 11:30 p.m., no one was there. She found the alarm still sounding, the kitchen light on, the back door closed but unlocked and her bedroom ransacked. She called ADT and was informed of the break-in.

Glasper testified that Hargraves occasionally stayed away from the home and that she was not sure whether he had stayed at the residence on the night prior to the break-in. She also noted that, facing the headboard, she slept on the right and Hargraves on the left and that they each kept their personal items in the drawers or compartments on their respective sides.

Glasper never opened the drawer on Hargraves' side of the bed and denied any knowledge of the items found in the headboard.

On June 21, 2000, the trial judge denied Hargraves' motion to suppress the evidence seized during the search of his home. The trial court overruled Hargraves' motion to strike and found him guilty of possession of cocaine with intent to distribute. On October 11, 2000, the court sentenced Hargraves to ten years imprisonment with six years of that sentence suspended. It is from this conviction that Hargraves appeals.

## II.

## Analysis

### A.  Motion to Suppress

In reviewing the trial court's denial of Hargraves' motion to suppress, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, the party prevailing below. Dickerson v. Commonwealth, 35 Va. App. 172, 543 S.E.2d 623 (2001). Hargraves has the burden on appeal to demonstrate that the denial of the motion to suppress constituted reversible error. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980); Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable

searches and seizures." U.S. Const. amend. IV. "A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement." Flippo v. West Virginia, 528 U.S. 11, 13 (1999) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). Searches made by the police pursuant to a valid consent do not implicate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (en banc).

At trial, the Commonwealth bears the burden of proving that consent was in fact given. Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989). The Commonwealth "must prove, given the totality of the circumstances, that the consent was freely and voluntarily given." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999). Where consent is based on implication, the Commonwealth bears a heavier burden of proof. Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000); Johnson v. Commonwealth, 26 Va. App. 674, 687, 496 S.E.2d 143, 150 (1998) (citing Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986)). The presence of consent is, however, a factual question. See Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996). Therefore, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from

those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699-703 (1996).

It is undisputed that Glasper did not expressly consent to a search of her home under the terms of her contract with ADT. Rather, the contract expressly required ADT to contact the police and Glasper if the alarm sounded.  The trial court found that, by virtue of her contract with the security company, Glasper provided "implied consent" for the police to enter her home and "investigate anything going on in the house."  Because the record does not support this finding, we reverse.

The Commonwealth argues that the police reasonably believed the contract provided implied consent for an investigation into the circumstances surrounding the activation.  To support this proposition, the Commonwealth cites several cases based on a third party's apparent authority to consent.  See Illinois v. Rodriguez, 497 U.S. 177, 179 (1990) (finding belief that third party possessed common authority of premises to give consent reasonable); Jones v. Commonwealth, 16 Va. App. 725, 432 S.E.2d 517 (1993) (finding officer could reasonably have believed that motel room was no longer occupied by guest and that maid thus had authority to consent to search); Caldwell v. Commonwealth, 15 Va. App. 540, 543, 425 S.E.2d 534, 536 (1993) (holding that officers acted reasonably in believing that defendant's sister

- 6 -

had general control over house and authority to consent to entry and search).  We find, however, that the facts and circumstances of this case do not sustain a finding of apparent authority.

Consent by a third party with apparent authority over the premises justifies a warrantless search only where "the facts surrounding the situation would have led a reasonable officer to conclude that the person providing consent had the requisite authority."  Jones, 16 Va. App. at 727-28, 432 S.E.2d at 519 (citing Rodriguez, 497 U.S. at 186-88).  As in all Fourth Amendment cases, the touchstone is "reasonableness under the facts and circumstances of the case."  Weathers v. Commonwealth, 32 Va. App. 652, 658, 529 S.E.2d 847, 850 (2000); see also Deer v. Commonwealth, 17 Va. App. 730, 734, 441 S.E.2d 33, 36 (1994) (holding that inquiry must focus on objective reasonableness rather than on officer's subjective intent).  In assessing whether apparent authority existed in Rodriguez, the United States Supreme Court stated:

> [a]s with other factual determinations bearing on search and seizure, determinations of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief" that the consenting party had authority over the premises?  If not, then warrantless entry without further inquiry is unlawful unless authority actually exists.

497 U.S. at 188-89 (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968)).  For example, in Jones, we found the officer could reasonably conclude that a motel room was vacant and that the maid had authority to consent to a search of the room based on the facts available to the officer.  16 Va. App. at 729, 432 S.E.2d at 519-20.  We noted that the officer saw no cars in the parking lot near the room, the doors to the room and surrounding rooms were open as if being cleaned and he could see no personal items while standing in the doorway.  Id.  Similarly, in Caldwell, we found it reasonable for an officer to believe a woman had authority to consent to a search because she possessed a key to her mother's house and assured the police that she had control over the property and authority to permit their entry into the home.  15 Va. App. at 541-43, 425 S.E.2d at 535-36.

In contrast, the facts and circumstances available to Officers Jackson and Norsworthy do not support the conclusion that the security contract provided consent.  The officers were notified by dispatch that a burglary alarm had sounded at Hargraves' residence.  When they arrived at the home, its condition suggested that a break-in had occurred.  Officer Norsworthy spoke with the security company.  The security company did not tell the officers to process the crime scene, nor did the company give consent to a search.  More importantly, the security company did not provide the police with any information about the company's contract with Glasper.  The

- 8 -

officers received no other information before conducting the search. Thus, we conclude that the facts known to the officers would not warrant a person of reasonable caution in the belief that the contract provided the company with "authority over the premises." Rodriguez, 497 U.S. at 188. In short, the Commonwealth contends that a reasonable officer could infer a homeowner's consent to a full investigatory search from the existence of a security contract and the sounding of the home's alarm. We find this proposition directly contrary to our Fourth Amendment jurisprudence.

It is a "'basic principle of Fourth Amendment law' that searches . . . inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980).

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home--a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated."

Id. at 589 (citation omitted). "The Fourth Amendment embodies [the] centuries-old principle of respect for the privacy of the home," Wilson v. Layne, 526 U.S. 603, 610 (1999), such that its entry "is the chief evil against which the wording of the Fourth Amendment is directed," United States v. United States District Court for E.D. Michigan, 407 U.S. 297, 313 (1972).

- 9 -

"[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its limitation,'" Mincey v. Arizona, 437 U.S. 385, 393 (1970) (quoting Terry, 392 U.S. at 25-26), and "[t]he scope of a [consent] search is generally defined by its expressed object." Florida v. Jimeno, 500 U.S. 248, 251 (1991); accord Lawrence v. Commonwealth, 17 Va. App. 140, 145, 435 S.E.2d 591, 594 (1993) ("'A suspect may . . . delimit as he chooses the scope of the search to which he consents.'" (quoting Jimeno, 500 U.S. at 252)); Megel v. Commonwealth, 262 Va. 531, 534, 536, 551 S.E.2d 638, 640, 642 (2001) (concluding that defendant's written agreement to "subject himself to random, unannounced home visits by the sheriff" while under an electronic incarceration program did not give the police the generalized right to fully search his home). Therefore, notification by a citizen of a possible crime in his or her home authorizes the police to "make a prompt warrantless search of the area to see if there are other victims or if a [criminal] is still on the premises," Mincey, 437 U.S. at 392, to protect property, or to render emergency aid or assistance if the police reasonably believe that such protection, aid, or assistance is needed. See generally 3 W. Lafave, Search and Seizure § 6.6, at 390-407 (1996). To conduct a more extensive search of the citizen's home, the Fourth Amendment requires a warrant, consent, or additional exigencies. See Flippo, 528 U.S. at 12-13 (finding no exception to the warrant requirement

- 10 -

where the police are called to a crime scene); Thompson v. Louisiana, 469 U.S. 17, 21 (1984) (per curiam) (same); Mincey, 437 U.S. at 390 (same). Consequently, a call to police for assistance when a crime has been committed does not relinquish or diminish a citizen's Fourth Amendment right to privacy in his or her home. See Thompson, 469 U.S. at 22 (finding that petitioner's attempt to get medical assistance and a call to police from her daughter did not diminish petitioner's expectation of privacy in her home); Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (finding that consent to search the home "must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred" (internal quotation omitted)).

Applying these principles, we hold that the dispatch of the police pursuant to a contract for home security and the sounding of the home's alarm, like any dispatch of the police to a crime scene, does not, without more, provide authority to conduct a full criminal investigation of the premises. Cf. McNair, 31 Va. App. at 83-84, 521 S.E.2d at 307-08 (finding full investigatory search of defendant's home, a crime scene, proper because defendant failed to withdraw consent when the search was expanded in his presence). Because the search in this case was conducted without a warrant or valid consent, it was unlawful and the evidence obtained as a result is inadmissible. See Mapp v. Ohio, 367 U.S. 643, 655 (1961) ("[A]ll evidence obtained by

- 11 -

searches and seizures in violation of the Constitution is
. . . inadmissible in a state court."). Accordingly, we reverse
the trial court's judgment and Hargraves' conviction.

B. Sufficiency of the Evidence

Notwithstanding the fact that we reverse for a Fourth
Amendment violation, "we address appellant's sufficiency of the
evidence argument because the Commonwealth would be barred on
double jeopardy grounds from retrying appellant if we were to
reverse for insufficiency of the evidence." Timbers v.
Commonwealth, 28 Va. App. 187, 202, 503 S.E.2d 233, 240 (1998);
see also Parsons v. Commonwealth, 32 Va. App. 576, 581, 529
S.E.2d 810, 812 (2000) (citing Burks v. United States, 437 U.S.
1, 98 (1978)).

> "When considering the sufficiency of the
> evidence on appeal of a criminal conviction,
> we must view all the evidence in the light
> most favorable to the Commonwealth and
> accord to the evidence all reasonable
> inferences fairly deducible therefrom.  The
> jury's verdict will not be disturbed on
> appeal unless it is plainly wrong or without
> evidence to support it."

Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260,
261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172,
176, 366 S.E.2d 719, 721 (1988)).  In making this assessment, we
consider all admitted evidence, including illegally admitted
evidence. Lockhart v. Nelson, 488 U.S. 33, 41 (1988).  "If
there is evidence to support the conviction, the reviewing court

is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). We accord the judgment of a trial court sitting without a jury the same weight as a jury verdict. See Clay v. Commonwealth, 30 Va. App. 254, 258, 516 S.E.2d 684, 685 (1999).

Hargraves argues that the evidence presented by the Commonwealth fails to establish that he was aware of the presence of the drugs. We disagree.

"To establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974). However, "suspicion or even probability of guilt is not sufficient. There must be an unbroken chain of circumstances 'proving the guilt of the accused to the exclusion of any other rational hypothesis and to a moral certainty.'" Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 736 (1971) (quoting Brown v. Commonwealth, 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970)). The Commonwealth must point to:

> evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character

- 13 -

of the substance and that it was subject to his dominion and control.

Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 368-69 (1994) (en banc) (citation omitted); see also Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). Although "ownership or occupancy of the premises where the drug is found does not create a presumption of possession . . . these factors may be considered in deciding whether an accused possessed the drug." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 872 (1998) (citations omitted).

The police found drugs, scales, cash, and plastic baggies in a drawer that Hargraves used for his personal belongings. The evidence unequivocally demonstrates that the contents of the drawer were under Hargraves' sole dominion and control. Glasper testified that Hargraves shared the home with her, occupied the left side of the bed and exclusively used the headboard and its drawer on that side. Furthermore, the police found Hargraves' identification card among the drug evidence.

The nature of the evidence found also indicates that Hargraves was aware of "the presence and character of the particular substance" in his drawer. The large plastic bag full of 56.9 grams of powder cocaine would have been easily visible in Hargraves' personal drawer.

Hargraves also contends the Commonwealth has not excluded his hypothesis that the unknown intruder placed the contraband

- 14 -

in his drawer.  See McNair, 31 Va. App. at 86, 521 S.E.2d at 308 ("Circumstantial evidence is sufficient to prove guilt beyond a reasonable doubt so long as 'all necessary circumstances proved . . . exclude every reasonable hypothesis of innocence.'" (quoting Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984))).  Because the evidence does not support this hypothesis, the Commonwealth is not charged with disproving it.  See Goins v. Commonwealth, 251 Va. 442, 467, 470 S.E.2d 114, 130 (1996) (holding that hypotheses which must be excluded are those that "arise from the evidence rather than from the imagination of defense counsel" (citations omitted)); Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) (finding that the Commonwealth met its burden without dispelling defendant's unsupported contention that someone else "surreptitiously discarded the pipe and cocaine in the car").

In addition, the Commonwealth need not disprove Hargraves' hypothesis because it is unreasonable.  See McNair, 31 Va. App. at 86, 521 S.E.2d at 308 (holding that the Commonwealth must exclude only reasonable hypotheses of innocence).  First, although the police found the room ransacked and several drawers open upon inspection, this particular drawer was closed.  Second, the drawer contained $1,100 in cash.  If the intruder had searched the drawer, it is reasonable to conclude that he or she would have taken the cash.  Third, it is highly unlikely that the intruder would have left such a valuable amount of

cocaine and electronic scales in the drawer.  See Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 883 (1992) (en banc) ("[T]he finder of fact may infer from the value of drugs found on premises owned or occupied by an individual that it is unlikely anyone who is a transient would leave a thing of great value in a place not under his dominion and control." (citation omitted)).

The evidence is, therefore, sufficient to prove that Hargraves possessed cocaine with intent to distribute.  For the reasons stated in this opinion, we reverse and remand for a new trial if the Commonwealth be so disposed.

Reversed and remanded.