COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judges Willis and Bray*
Argued at Alexandria, Virginia


CHRISTOPHER A. U-THASOONTHORN

MEMORANDUM OPINION** BY
v.    Record No. 1879-01-4      JUDGE ROSEMARIE ANNUNZIATA
OCTOBER 8, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

James G. Connell, III (Michael F. Devine;
Devine & Connell, on briefs), for appellant.

Steven A. Witmer, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellee.


On April 24, 2001, a jury convicted Christopher A.

U-Thasoonthorn of aggravated malicious wounding, in violation of

Code § 18.2-51.2, and sentenced him to twenty years in prison.

On June 29, 2001, the trial court denied U-Thasoonthorn's motion

to set aside the jury's verdict and imposed the sentence

determined by the jury, to wit, twenty years with eight years

suspended.  U-Thasoonthorn appeals his conviction on two

    * Judges Willis and Bray participated in the hearing and
decision of this case prior to the effective date of their
retirement on September 1, 2002 and thereafter by their
designation as a senior judge pursuant to Code § 17.1-401.

    ** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

grounds: (1) the trial court erroneously refused his proffered jury instruction; and (2) the evidence was insufficient to sustain his conviction. For the reasons that follow, we reverse and remand.

## I. Background

On the evening of October 26, 2000, Jeffrey Putman, Melissa Steele, and Tess Wenger, U-Thasoonthorn's girlfriend, went out drinking and returned to Steele's home between 3:00 and 4:00 a.m. on October 27, 2000. When they returned, Putman and Wenger engaged in sexual foreplay and went to sleep on a "hide-a-bed" in Steele's living room.

At approximately 6:00 a.m. Steele left the house to go to the airport. At 6:37 a.m., U-Thasoonthorn used his cell phone to call Steele on her mobile phone. Steele testified that he aggressively asked, "Where's my girlfriend?" She told him that Wenger was at her house sleeping and that she was fine. U-Thasoonthorn told Steele he was going to work. He did not arrive at work until about 8:30 a.m. that morning.

At approximately 7:00 a.m., Steele's neighbor observed a man fitting U-Thasoonthorn's description walking back and forth down the middle of the street, looking at the houses. U-Thasoonthorn subsequently entered Steele's apartment without permission and walked through the house until he reached the living room. He found Putman and Wenger asleep on the hide-a-bed. He observed that Putman was wearing only his boxer

-

shorts and Wenger was wearing the clothes she wore the night before.

U-Thasoonthorn unsuccessfully attempted to awaken Wenger. Putman awoke, however, whereupon U-Thasoonthorn hit him "a lot of times." "[He] hit him over and over and over." U-Thasoonthorn then went to the kitchen and washed blood from his hands. He left the house, leaving his cell phone behind.

U-Thasoonthorn beat Putman so forcefully that he had at least ten separate fractures of his facial bones, including multiple fractures of the bones of his eye socket and his cheekbones. U-Thasoonthorn also broke Putman's jaw. Dr. Steven P. Davidson testified that these injuries were not consistent with the use of fists or a blunt object. He noted that Putman's injuries required "a substantial amount of point impact," caused by an instrument such as a tool or crowbar.

After the beating, at approximately 7:20 a.m., another neighbor observed a man fitting U-Thasoonthorn's description get into his car and rapidly drive away. U-Thasoonthorn arrived at his place of employment at approximately 8:30 a.m. and left at approximately 11:30 a.m. Later that evening, he drove from Fairfax to Blacksburg, Virginia.

He arrived in Blacksburg at about midnight and met his friend and fellow Marine, Ray Marotta. He told Marotta that "his girlfriend had cheated on him and the guy that . . . she cheated on him with got beat up when they were together at some

-

apartment."  He told his friend he was scared because he thought he would be the prime suspect.  He told his friend, "I'm innocent, I didn't do it."  His friend noticed a cut on the inside of his hand, which he admitted at trial occurred while he beat Putman.  Yet, he told Marotta, "I cut my hand at work."

U-Thasoonthorn knew the police were looking for him.  He left his car in Blacksburg with Marotta and drove Marotta's car back to northern Virginia.  Marotta testified that he noticed a bloodstain on the seatbelt of U-Thasoonthorn's car when they exchanged cars.  Several days later, U-Thasoonthorn returned to Blacksburg and cut the bloodstained seatbelt out of his car. When Marotta asked why there was no seatbelt in the car, U-Thasoonthorn did not explain.  Rather, he told Marotta that if he wanted to get a new seatbelt, he would pay for it.

At trial, the court instructed the jury, in part, as follows:

> If a person acts upon reflection or deliberation, or after his passion has cooled or there has been a reasonable time or opportunity for cooling, then the act is not attributable to the heat of passion.

The court overruled U-Thasoonthorn's objection to this instruction and declined to give his proffered instruction, which did not include reference to "cooling off."

-

## II.  Analysis

### A.  Jury Instruction

U-Thasoonthorn contends that the trial court erred by giving an instruction that included reference to a "cooling off" period related to U-Thasoonthorn's heat of passion defense and by refusing his proffered instruction excluding that principle. He contends that the evidence did not support the instruction given.  We agree.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted).  In determining whether a jury instruction should have been refused, we view the evidence in the light most favorable to the proponent of the instruction.  Lynn v. Commonwealth, 27 Va. App. 336, 344, 499 S.E.2d 1, 4-5 (1998) (citation omitted), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999).

"Although an instruction correctly states the law, if it is not applicable to the facts and circumstances of the case, it should not be given."  Hatcher v. Commonwealth, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978) (citation omitted).  "No instruction should be given unless it is supported by evidence, and such evidence must be more than a scintilla."  Carter v. Commonwealth, 232 Va. 122, 128, 348 S.E.2d 265, 269 (1986)

-

(citation omitted); accord Goodson v. Commonwealth, 22 Va. App. 61, 78, 467 S.E.2d 848, 857 (1996) ("'[T]he trial court should instruct the jury only on those theories of the case which find support in the evidence.'" (citation omitted)).

> The Virginia appellate courts have not defined the term "scintilla." Although this term has a generally accepted meaning of "a spark" or "the least particle," the precise limitations of this term must necessarily be determined in the factual context of a particular case. The determination whether the minimum quantum of credible evidence supports a particular proposition is largely a factor of determining the weight of that evidence in comparison to the weight of the other credible evidence that negates the proposition in question.

Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993); see also Winston v. Commonwealth, 16 Va. App. 901, 905, 434 S.E.2d 4, 6 (1993). Moreover, the jury's possible rejection of evidence is not a substitute for affirmative evidence to support a jury instruction. See Commonwealth v. Donkor, 256 Va. 443, 446-47, 507 S.E.2d 75, 76 (1998).

"Generally, a 'cooling off' instruction is sought by the Commonwealth to enable the jury to find that an accused's passion kindled by an act of provocation has 'cooled' so as to enable the accused to regain his or her reason before committing the [act of violence]." Lynn, 27 Va. App. at 345, 499 S.E.2d at 5. "Heat of passion is determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both." Barrett v. Commonwealth, 231 Va. 102,

-

106, 411 S.E.2d 190, 192 (1986) (citations omitted).  In assessing the cooling of passion, "the time to be considered is the interval between the provocation and the act, not the time during which the furor brevis controls."  Potter v. Commonwealth, 222 Va. 606, 610, 283 S.E.2d 448, 450 (1998).

The evidence at trial, viewed in the light most favorable to the Commonwealth, does not support the trial court's cooling off instruction to the jury.  It is beyond dispute that U-Thasoonthorn was enraged and thus provoked when he found his girlfriend of eight years, wearing the clothes she wore the previous night, in bed with another man who wore only his underwear.  The Commonwealth's evidence suggests that after this provocation, U-Thasoonthorn tried unsuccessfully to wake Wenger, obtained a weapon, and beat Putman.  It further contends that while U-Thasoonthorn attempted to wake Wenger and obtained a weapon with which to beat Putman, sufficient time elapsed for his passion to subside and reason to return.  The evidence, however, fails to support this contention.

The Commonwealth offered no evidence to prove that U-Thasoonthorn's passion cooled between the time he was provoked, obtained a weapon, and beat Putman.  Indeed, nothing in the record disputes the conclusion that his furor brevis controlled his actions during this brief period.  See Potter, 222 Va. at 610, 283 S.E.2d at 450 ("While the sufficiency of time for cooling is a question of fact to be decided by the

-

jury, the time to be considered is the interval between the provocation and the act, not the time during which the _furor brevis_ controls."). Accordingly, "[n]o version of the evidence established a period elapsed [between the provocation and the assault during] which reasonably could have been viewed by the jury as a 'cooling off' period," and an instruction to that effect was error. _Lynn_, 27 Va. App. at 346, 499 S.E.2d at 6.

Moreover, the trial court's erroneous instruction is not harmless. A nonconstitutional error is harmless if "it plainly appears from the record and the evidence given at trial that the error did not affect the verdict." _Scott v. Commonwealth_, 18 Va. App. 692, 695, 446 S.E.2d 619, 620 (1994) (quoting _Lavinder v. Commonwealth_, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (_en banc_)). "'An error does not affect a verdict if a reviewing court can conclude, without usurping the [fact finder's] function, that had the error not occurred, the verdict would have been the same.'" _Id._ (citation omitted).

A conviction for malicious wounding, and thus for aggravated malicious wounding, requires a finding that the accused acted with malice and not in the heat of passion. _See_ Code § 18.2-51. Under a proper instruction, the jury in this case may have found that U-Thasoonthorn acted in the heat of passion and thus was not guilty of aggravated malicious wounding. _See Miller v. Commonwealth_, 5 Va. App. 22, 25, 359

-

S.E.2d 841, 842 (1987) (noting that malice and passion cannot co-exist).

Indeed, whether U-Thasoonthorn acted in the heat of passion or with malice was the key issue at trial. U-Thasoonthorn acknowledged that he committed violence against Putman, but contended that he acted in the heat of passion. In addition, the Commonwealth emphasized to the jury that U-Thasoonthorn did not act in the heat of passion, because he had an opportunity to cool but "did not want [his passion] to cool." In short, we cannot conclude that the jury would have found U-Thasoonthorn guilty of aggravated malicious wounding if they had not received the improper instruction regarding "cooling off." Therefore, the trial court's instruction constitutes reversible error. See Scott, 18 Va. App. at 695, 446 S.E.2d at 620.

## B. Sufficiency of the Evidence

Notwithstanding the fact that we reverse on the ground that the trial court erroneously instructed the jury, "we address appellant's sufficiency of the evidence argument because the Commonwealth would be barred on double jeopardy grounds from retrying appellant if we were to reverse for insufficiency of the evidence." Timbers v. Commonwealth, 28 Va. App. 187, 202, 503 S.E.2d 233, 240 (1998); see also Hargraves v. Commonwealth, 37 Va. App. 299, 312, 557 S.E.2d 737, 743 (2002); Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812 (2000) (citing Burks v. United States, 437 U.S. 1, 98 (1978)).

-

U-Thasoonthorn contends that the evidence at trial was insufficient to prove beyond a reasonable doubt that he intended to maim, disfigure, disable, or kill Putman and that he acted with malice. For the reasons that follow, we disagree.

When the sufficiency of the evidence is challenged on appeal, "[w]e view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence." Cooper v. Commonwealth, 31 Va. App. 643, 646, 525 S.E.2d 72, 73 (2000); accord Hargraves, 37 Va. App. at 312, 557 S.E.2d at 743. The appellate court must, therefore, "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn" from the credible evidence. Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998). The credibility of the witnesses and the weight of the evidence are matters to be determined solely by the trier of fact. Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989). In addition, the inferences drawn from the evidence, so long as they are reasonable, are within the province of the jury. See Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968). Furthermore, the decision of the trial court will not be disturbed unless plainly wrong or without evidence to support it. McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). "If

-

there is evidence to support the conviction," an appellate court will not substitute its judgment for that of the trier of fact, even were its opinion to differ.  Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

To support a conviction for aggravated malicious wounding under Code § 18.2-51.2, the Commonwealth must prove that the defendant inflicted the victim's injuries with the intent to maim, disfigure, disable or kill.  See Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000) (citing Campbell v. Commonwealth, 12 Va. App. 476, 483, 405 S.E.2d 1, 4 (1991) (en banc)).  "'Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case.'"  David v. Commonwealth, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986) (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)).  "[T]he fact finder is often allowed broad latitude in determining specific intent of the actor."  Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 27 (1992).  However, when the Commonwealth relies on circumstantial evidence to prove guilt beyond a reasonable doubt, "all necessary circumstances proved must exclude every reasonable hypothesis of innocence."  Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).

> Malice inheres in the doing of a wrongful
> act intentionally, or without just cause or
> excuse, or as a result of ill will.  It may

-

be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury. Whether malice existed is a question for the fact finder.

Robertson, 31 Va. App. at 823, 525 S.E.2d at 645 (quotations and citations omitted).

U-Thasoonthorn contends that the evidence at trial is equally susceptible to two interpretations and therefore does not exclude the reasonable hypothesis that he acted in the heat of passion and without intent or malice. He claims that the jury "arbitrarily adopt[ed] that interpretation which incriminates him." Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969).

To the contrary, the circumstantial evidence offered by the Commonwealth, viewed in the light most favorable to its position, proved that U-Thasoonthorn beat Putman "with the intent to maim, disfigure, disable or kill [him]," Campbell, 12 Va. App. at 483, 405 S.E.2d at 4, as well as with malice. First, the brutal nature of the attack supports the jury's finding of malice and intent. See Epperly v. Commonwealth, 224 Va. 214, 231, 294 S.E.2d 882, 892 (1982) (evidence demonstrating savage beating supports finding of malice); Flemming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991) ("The fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." (citation omitted)). Second, U-Thasoonthorn's actions in

-

covering up the crime indicate that he acted with specific intent and malice.  See Epperly, 224 Va. at 232, 294 S.E.2d at 893 (holding that defendant's efforts to conceal his crime and avoid detection support jury's finding that defendant acted willfully and with malice).  Finally, the jurors disbelieved U-Thasoonthorn's testimony, the only evidence supporting U-Thasoonthorn's claim that he acted in the heat of passion, and were entitled to consider his testimony to be perjured and, thus, affirmative evidence of his guilt.  See Wright v. West, 505 U.S. 277, 296 (1992); see also Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981) ("The fact finder need not believe the accused's explanation and may infer that he is trying to conceal his guilt." (citation omitted)).  While no single piece of evidence is sufficient to sustain U-Thasoonthorn's conviction, the totality of the evidence proves beyond a reasonable doubt that he maliciously beat Putman with intent to kill, maim, disable or disfigure him.  See Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979).  Therefore, we hold that U-Thasoonthorn may be retried without violating double jeopardy principles.

In summary, we reverse U-Thasoonthorn's conviction because the trial court committed reversible error by instructing the jury on "cooling off," when the evidence did not support that

-

instruction, and we remand the matter for retrial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>