COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


ANTOINE EUGENE RIDLEY

                                      MEMORANDUM OPINION[*] BY
v.    Record No. 2311-02-1            JUDGE ROBERT J. HUMPHREYS
                                           JULY 15, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Everett A. Martin, Jr., Judge

            William P. Robinson, Jr. (Robinson, Neeley &
            Anderson, on brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     Antoine Eugene Ridley appeals his conviction, upon a

conditional plea of guilty, for possession of heroin, possession

of cocaine with intent to distribute, and assault.  Ridley

contends the trial court erred in finding police possessed the

requisite reasonable suspicion to support his detention and

subsequent search.  For the reasons that follow, we affirm the

judgment of the trial court.

     In accordance with settled principles of appellate review,

on appeal of a trial court's denial of a motion to suppress, we

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from it.  Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002).

On or about October 29, 1999,[1] at approximately 6:20 p.m., Officer Mark Daniel Laino, of the Norfolk Police Department, was driving his marked patrol car "in the 7100 block of Sewells Point when [he] was flagged down by a citizen on the side of the road."  The citizen informed Officer Laino that "there was a black male wearing a black nylon jogging suit," "in the 7100 block of Sewells Point in the Johnson Square Apartment Complex," "selling narcotics in the parking lot."  Officer Laino and the citizen were approximately 500-1,000 yards from the Johnson Square apartments at that time, and did not have a view of the parking lot from their location.

Based upon the information provided by the citizen, Officer Laino drove to the apartment complex and "pull[ed] into the parking lot."  He immediately observed "an individual fitting the description exactly standing [sic] right in the middle of the parking lot of the 7100 block of Sewells Point Road.  There wasn't anybody else around him at that time."  The individual was later determined to be Ridley.

Officer Laino "pulled [his] police car into the middle of the lot," and Ridley walked past him. Ridley then "turned around from [Laino] and he started walking the other way." Officer Laino asked Ridley if he lived in the apartment complex and Ridley replied, "No, no. I'm just cutting through." Officer Laino then stated, "well, you're trespassing. You're not supposed to be in here." Ridley again stated that he was "just cutting through," and walked back toward Officer Laino.

At that time, Officer Laino got out of his patrol car and asked Ridley where he lived. Ridley told him he lived on Cutrell Street. This statement "drew" Laino's suspicion because the apartment complex was a "gated community." Although there were holes in some of the gates, Officer Laino knew that "[i]t wouldn't make sense to go from Cutrell Street to cut through that area to go somewhere."

Officer Laino then asked Ridley to remove his hands from his pockets, and Ridley complied. Laino asked Ridley if he had "any guns, knives, drugs or anything like that on [him]," and Ridley stated, "[N]o." Nevertheless, Officer Laino asked, "[D]o you mind if I pat you down?" Ridley then walked to the hood of Laino's police car and placed his hands on the car. "He was being cooperative." When Officer Laino began "patting him

---

[1] We note that the warrants designate the date of the offense as October 29, 1999. However, one of the corresponding

down," Ridley removed one of his hands from the car. Laino asked him to put his hand back on the car. Ridley said, "[O]h, I'm, [sic] sorry," "I didn't mean anything by it," and put his hand back on the car. Officer Laino then continued "patting [Ridley] down."

A few moments later, Ridley removed his hand from the car once again. Officer Laino said, "[S]ir, keep your hand on the police car." Ridley again apologized and placed his hand back on the car. When Officer Laino continued the pat-down, he "moved [Ridley's] feet back a little bit further to get his feet off balance." At that point, Ridley "pushed off the car, swung around and took a swing at [Laino]." Laino moved to "miss the punch" and "grabbed [Ridley's] jacket." Ridley tried to "wiggle his way out of the jacket," and eventually "broke free from [Laino's] grasp" and began running. Officer Laino chased Ridley, stopped him, and "wrestled him down to the ground." Laino then called for assistance.

While Officer Laino was waiting for assistance, Ridley continued to struggle, striking Laino in the "chestplate area" "several times." When another officer arrived, the two officers were able to handcuff Ridley and place him in custody.

Upon a search of Ridley's person, incident to arrest, Officer Laino recovered a "plastic like wax paper" containing

---

indictments designates the date of the offense as October 30,

- 4 -

"powder material which was suspected heroin," a "rock like substance suspected to be crack cocaine," and "a large quantity of [U.S.] currency."

Prior to his trial on charges of possession of heroin, possession of cocaine with intent to distribute, and assault, Ridley moved to suppress the evidence against him. Ridley contended the "interrogation and search" "was unreasonable and in violation of the 4th, 5th and 6th Amendments to the United States Constitution."

During the hearing on the motion, Officer Laino testified to the events set forth above. He further testified that, at the time of the incident, he knew the area to be a "high-crime area, a high-drug area." After hearing the evidence and considering arguments of counsel, the trial court overruled the motion to suppress.[2] Ridley subsequently pled guilty to the charges at issue, conditioned upon the preservation of his right to appeal. The trial court sentenced Ridley to eight years and six months in prison, with two years suspended upon certain conditions.

On appeal, Ridley contends the trial court erred in denying his motion to suppress. Ridley argues that the "detention and search" violated the Fourth and Fourteenth Amendments to the

1999.

United States Constitution because "said detention and search were predicated entirely upon a tip from an unknown citizen." "[U]ltimate questions of reasonable suspicion and probable cause" involve questions of both law and fact and are reviewed de novo on appeal. Ornelas v. United States, 517 U.S. 690, 691 (1996). In performing this analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers. Id. at 699. We analyze a trial court's determination whether the Fourth Amendment was implicated by applying de novo our own legal analysis of whether based on those facts a seizure occurred. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc); see also Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995).

It is well settled that the Fourth Amendment "does not proscribe all seizures, only those that are 'unreasonable.'" Hodnett v. Commonwealth, 32 Va. App. 684, 690, 530 S.E.2d 433, 436 (2000) (quoting Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 126-27 (1998) (en banc)).

> Well established fourth amendment
> jurisprudence has placed police-citizen

---

2 The arguments of counsel were not included in the transcript and/or the appendix on appeal.

confrontations into three categories. First, there are communications between police officers and citizens that are consensual and, therefore, do not implicate the fourth amendment. Second, there are brief investigatory stops which must be based on specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant a limited intrusion. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause.

Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988). The Commonwealth contends we do not need to reach Ridley's assertion pertaining to the legality of the detention and search based upon the information provided by the informant, because the detention and search here were consensual.

As stated above, the United States Supreme Court has long held that searches made by the police pursuant to a valid consent do not implicate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Iglesias, 7 Va. App. at 99, 372 S.E.2d at 173. "At trial, the Commonwealth bears the burden of proving that consent was in fact given." Hargraves v. Commonwealth, 37 Va. App. 299, 307, 557 S.E.2d 737, 741 (2002). The Commonwealth must also prove that, under the totality of the circumstances, the consent was freely and voluntarily given. Id. "The presence of consent is, however, a factual question." Id. In the case at bar, the record reflects no explicit factual determination that the detention and search at issue were conducted pursuant to Ridley's consent. Therefore, we review

- 7 -

the totality of the circumstances to determine whether a finding

that this was a consensual encounter is implicit in the trial

court's denial of the motion to suppress.

> A consensual encounter occurs when police officers approach persons in public places "to ask them questions," provided "a reasonable person would understand that he or she could refuse to cooperate." United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (quoting Florida v. Bostick, 501 U.S. 429, 431 (1991)); see also Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989). Such encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing," and remain consensual "as long as the citizen voluntarily cooperates with the police." Wilson, 953 F.2d at 121. Fourth Amendment scrutiny is triggered, however, the moment an encounter "'loses its consensual nature.'" Id. (quoting [Bostick, 501 U.S. at 434]).

> In Wilson, the Fourth Circuit considered "the effect of a person's unsuccessful attempt to terminate what began as a consensual encounter." Wilson, 953 F.2d at 121. The Court opined that a voluntary police-citizen encounter "should be placed in the realm of [a] Fourth Amendment 'seizure '" when "a reasonable person would have believed that he was not free to leave." Id.; see also Richards, 8 Va. App. at 615, 383 S.E.2d at 270 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)); Goodwin v. Commonwealth, 11 Va. App. 363, 365, 398 S.E.2d 690, 691 (1990); Moss v. Commonwealth, 7 Va. App. 305, 307, 373 S.E.2d 170, 171 (1988). The "principle embodied by the phrase 'free to leave' means the ability to ignore the police and to walk away from them," to "'feel free to decline the officers' requests or otherwise terminate the encounter.'" Wilson, 953 F.2d at 122

- 8 -

(quoting [Bostick, 501 U.S. at 436]).

Payne v. Commonwealth, 14 Va. App. 86, 88-89, 414 S.E.2d 869, 870 (1992).  "'Thus, a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains in some manner a citizen's freedom of movement.  Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards.'"  McLellan v. Commonwealth, 37 Va. App. 144, 152, 554 S.E.2d 699, 703 (2001) (quoting McCain v. Commonwealth, 261 Va. 483, 490-91, 545 S.E.2d 541, 545-46 (2001)).

> The [United States] Supreme Court has detailed examples of circumstances that may indicate that a seizure has occurred.  Such examples include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  Mendenhall, 446 U.S. at 554; [Parker v. Commonwealth, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998)]; [Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992)].

McCain, 261 Va. at 491, 545 S.E.2d at 545-46.

In McGee v. Commonwealth, 25 Va. App. 193, 487 S.E.2d 259 (1997) (en banc), we further recognized that:

> When the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police "convey a message that compliance with their requests is required," [Bostick, 501 U.S. at 435], and "that failure to cooperate would lead

- 9 -

only to formal detention." United States v. Berry, 670 F.2d 583, 597 (5th Cir. 1982).

25 Va. App. at 200, 487 S.E.2d at 262 (other citations omitted).

In McGee, three police officers approached the defendant, who was sitting on a porch in front of a store, after receiving a radio dispatch that a black male wearing a white T-shirt, black shorts, and white tennis shoes was selling drugs on a corner nearby. Id. at 196, 487 S.E.2d at 260. The officers informed the defendant that they "had received a call that [he] was on this corner selling drugs and [that he] matched the description" of the individual who had been reported as selling drugs. Id. (alterations in original). We found that the officers' subsequent search of the defendant, although consensual, was unlawful because the officers detained the defendant when they approached him and specifically identified him as the subject of their drug investigation. Id. at 201, 487 S.E.2d at 263. This Court found that detention was unlawful because it was not based upon sufficient evidence to support a reasonable articulable suspicion of criminal activity. Id. at 203, 487 S.E.2d at 264.

We emphasized that "when a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave." Id. at 200, 487 S.E.2d at 262 (emphasis added). We went on to note that "[w]hether a seizure occurs must be determined by evaluating the facts of each case to determine whether the manner in which the police identified the individual

- 10 -

as a suspect <u>conveys</u> to the person that he or she is a suspect and is not free to leave." <u>Id.</u> at 200-01, 487 S.E.2d at 262-63 (emphases added).[3]

Ridley contends that, under <u>McGee</u>, his initial detention was unlawful, thus the evidence obtained as a result thereof should have been suppressed. We disagree.

Unlike the facts in <u>McGee</u>, the record in this case demonstrates that Ridley was approached by only one officer, who initially remained seated in his patrol car. Further, Officer Laino did not inform Ridley that he was the subject of a police investigation, but while still seated in his police car, merely asked him if he lived in the apartment complex and informed him that he was "trespassing" and "not supposed to be there," when Ridley replied that he did not live there. The "totality" of these circumstances fall far short of those with which we were concerned in <u>McGee</u>. Indeed, although Officer Laino accused

---

[3] In a footnote, we specifically noted that "[o]ther factors that could be considered include the number of officers present, whether the officers displayed weapons, and physical circumstances of the encounter." <u>McGee</u>, 25 Va. App. at 200 n.2, 487 S.E.2d at 262 n.2.

- 11 -

Ridley of committing the crime of trespass, the record reflects that he did so in the context of a conversation between the two men concerning Ridley's reason for being in the parking lot - not in the context of a criminal investigation or arrest for that particular criminal offense.  Moreover, Officer Laino engaged in no conduct which even arguably conveyed to Ridley that he was not free to leave and that compliance with Officer Laino's requests was required.

Thus, the circumstances at issue here establish that the initial meeting between Ridley and Officer Laino was not a detention, but was a consensual encounter, implicating no Fourth Amendment interests.  Laino merely called out to Ridley, approached him, then inquired if he lived in the apartment complex.  Ridley was cooperative and remained so, even when Officer Laino asked him if he was carrying any drugs or weapons. When Officer Laino asked Ridley if he could pat him down, Ridley placed his own hands against Laino's patrol car.

However, our analysis cannot end here.  The record reflects that the consensual aspect of this encounter soon disappeared. When Ridley tried to take his hands off of Laino's patrol car, Officer Laino first asked, but then later ordered Ridley to keep his hands on the car.  Officer Laino then "moved" Ridley's feet back to place him off balance, so that he could complete the pat-down search.  Under the restraint demonstrated by this

course of conduct, a "reasonable person" clearly would not have "fe[lt] free to leave," to "ignore" the officer and "walk away," at that point in time. Thus, for Fourth Amendment purposes, we find that Ridley was "seized" by Officer Laino at that time. Payne, 14 Va. App. at 88-89, 414 S.E.2d at 870.

Due to the unique circumstances of this case, however, our analysis does not now require us to consider the lawfulness of that detention, because immediately after the encounter became a detention, Ridley "took a swing" at Officer Laino, in an effort to leave. The Supreme Court of Virginia has held that "a person in this Commonwealth does not have the right to use force to resist an unlawful detention or 'pat down' search." Commonwealth v. Hill, 264 Va. 541, 548, 570 S.E.2d 805, 809 (2002). In Hill, the Court reasoned that

> [b]ecause a detention is, by its nature, a brief intrusion on an individual's liberty, the provocation resulting from an illegal detention is far less significant than the provocation that attends an illegal arrest. Thus, recognition of a right to resist an unlawful detention would not advance the rationale supporting the common law right to use reasonable force to resist an unlawful arrest, but would only serve to increase the danger of violence inherent in such detentions.

Id. at 548, 570 S.E.2d at 808-09.

Accordingly, because Ridley had no right to resist the detention by use of force, Officer Laino possessed the requisite probable cause to arrest Ridley at that point in time. See

- 13 -

Bennett v. Commonwealth, 35 Va. App. 442, 449, 546 S.E.2d 209, 212 (2001) (defining assault as "'[a]n attempt or offer, with force and violence, to do some bodily hurt to another, . . . as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner . . . or any similar act accompanied with circumstances denoting an intention coupled with a present ability, of using actual violence against the person of another'" (quoting Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955))); see also Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970) ("[T]he test of constitutional validity [of a warrantless arrest and incidental search] is whether . . . the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed."). Therefore, the subsequent search conducted by Laino was proper, as incident to that arrest. United States v. Robinson, 414 U.S. 218, 224 (1973); Wright v. Commonwealth, 222 Va. 188, 192-93, 278 S.E.2d 849, 852 (1981). Because we find the search at issue here was proper, as incident to a lawful arrest, we need not address Ridley's argument that the information provided to Officer Laino by the unknown citizen informant was insufficient to provide him with the necessary

- 14 -

reasonable suspicion to detain Ridley, and we affirm the judgment of the trial court.

Affirmed.