COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and AtLee
Argued at Norfolk, Virginia

DESHAWN HOLLY, S/K/A
 DESHAWN LEON HOLLY

                                                 MEMORANDUM OPINION* BY
v.     Record No. 1791-18-1          JUDGE RICHARD Y. ATLEE, JR.
                                                 DECEMBER 27, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

Jessica E. B. Crossett, Chief Deputy Public Defender (Robert Moody,
IV, Deputy Public Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Deshawn Holly was convicted, after a bench trial, of possession of cocaine in violation of

Code § 18.2-250. He was sentenced to two years of incarceration, with ten months suspended.

Holly appeals his conviction, arguing that the trial court erred by denying his motion to suppress

because the initial warrantless entry into his hotel room was unlawful. For the following

reasons, we disagree and affirm the trial court.

I. BACKGROUND

On September 24, 2017, police officers responded to a reported robbery at a motel in

Newport News. Officer Potts of the Newport News Police Department was the first officer to

arrive on the scene. As soon as he arrived, he was approached by a woman, later identified as

Cindy Braxton-Hicks, who informed him that she had been robbed in Room 48 of the motel.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

She claimed that her friend, Holly, had put her in a headlock and stole her money from her bra. She also told Officer Potts that she had not seen Holly come out of the motel room and that he might still be in there.

Officer Potts, with a second officer, approached the room with their weapons drawn and discovered the door to the room was open. Potts yelled, "Newport News Police. Come out with your hands up." Receiving no response, Officer Potts called out two more times before he entered the room. The officers conducted a quick sweep of the room, less than thirty seconds in duration, and checked under the bed and in the bathroom to ensure that no one was hiding there.

During the sweep, Officer Potts saw a broken glass tube laying on the bathroom floor. He did not touch it. The officers then exited the room and closed the door, and Officer Potts went to the motel office to find out who the registered guest was and to obtain a key. After obtaining the key, Officer Potts went back up to talk to Braxton-Hicks.[1]

Officer Potts attempted to locate Holly, who eventually came back to the motel and approached the officers in the motel parking lot. After questioning both Holly and Braxton-Hicks, the officers concluded that no robbery had occurred.[2]

Officer Potts accompanied Holly back to the room to obtain his identification. Once in the room, Officer Potts handcuffed Holly and placed him in a chair in the motel room. Braxton-Hicks was also handcuffed and left near the motel room door. Law enforcement informed them that they were both being detained for a narcotics investigation, and Officer Potts read them their Miranda rights. Holly then consented to a search of the room.

---

[1] Two other officers entered the room for a second time while Officer Potts was talking to Braxton-Hicks. This entry was not challenged.

[2] The officers discussed whether to charge Braxton-Hicks with making a false report.

The officers thoroughly searched the room. Officer Potts examined the glass tube he had previously seen in the bathroom. He saw burnt residue on it and found it was consistent with use for smoking crack cocaine. Testing later confirmed that the residue was cocaine residue.

Officer Potts questioned Holly and Braxton-Hicks about the glass tube. Eventually, Holly confessed it was his and made a number of incriminating statements.

Before trial, Holly filed a motion to suppress the glass tube and the statements made to the police while detained, arguing that the initial entry was unlawful and that everything flowing from that entry should be suppressed. Holly argued that exigent circumstances did not justify the warrantless entry, focusing primarily on the fact that no weapons or force were used.

The Commonwealth responded that robbery is a serious and violent offense and that the officer had been informed that Holly had placed Braxton-Hicks in a chokehold. Further, the Commonwealth pointed out that the officers had been told Holly was probably still in the room.

The trial court relied on Hargraves v. Commonwealth, 37 Va. App. 299 (2002), which allows a "prompt, warrantless search" to see if there are victims or if a criminal is on the premises after a report of a possible crime. Because of the limited duration and the officer's reasonable belief that the suspect could still be hiding in the room, the trial court determined that the search was reasonable and denied the motion to suppress. Holly now appeals to this Court.

## II. ANALYSIS

Holly argues that the "trial court erred by denying [his] motion to suppress because the warrantless entry into his hotel room was unlawful as was the resulting detention and consent."

"On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." Carlson v. Commonwealth, 69 Va. App. 749, 757 (2019) (quoting McCracken v. Commonwealth, 39 Va. App. 254, 258 (2002)). "We give deference to

- 3 -

the trial court's factual findings and review *de novo* the application of law to those facts." Id. at 758.

"The Fourth Amendment protects against unreasonable searches and seizures." Id. "[T]he general rule with regard to hotel and motel rooms is that a *registered* occupant has a reasonable expectation of privacy 'equivalent to [that] of the rightful occupant of a house.'" Salahuddin v. Commonwealth, 67 Va. App. 190, 204-05 (2017) (second alteration in original) (quoting McCary v. Commonwealth, 36 Va. App. 27, 36 (2001)). Generally, "searches and seizures inside a home without a warrant are presumptively unreasonable." Kentucky v. King, 563 U.S. 452, 459 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). "Despite the absence of a warrant, however, police may lawfully enter a home . . . if they have probable cause coupled with exigent circumstances." Commonwealth v. Campbell, 294 Va. 486, 493 (2017).

"No fixed legal definition fully captures the meaning of exigent circumstances. Police officers find themselves in a myriad of situations with varied fact patterns. No court could provide an exhaustive enumeration of factors that would distinguish circumstances that qualify as exigent from those that would not." Evans v. Commonwealth, 290 Va. 277, 283 (2015). The Supreme Court has, however, compiled a non-exhaustive list of factors to consider when evaluating exigent circumstances:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended;

and (10) the suspects' recent entry into the premises after hot pursuit.

Verez v. Commonwealth, 230 Va. 405, 410-11 (1985). A court looks to "the circumstances as they reasonably appeared to the law enforcement officers on the scene." Id. at 411. Officers are "not required to possess either the gift of prophecy or the infallible wisdom that comes with hindsight." Washington v. Commonwealth, 60 Va. App. 427, 438 (2012) (quoting Hill v. Commonwealth, 18 Va. App. 1, 3 (1994)).

We addressed the application of exigent circumstances in Washington. There, police had received a report of a burglary at a particular location and followed footprints in fresh snow to a trailer. Id. The trailer door immediately swung open when the officers knocked on it. When officers entered, they discovered items stolen from the first location, and the home turned out to be the defendant's. Id. at 433. Nonetheless, this Court held that the facts were sufficient to justify a reasonable officer in believing that the home may have recently been or was in the process of being burglarized. Id. at 438. "If it is possible the burglar is still at the scene, the police may look in places where he might be hiding." Id. at 437 (quoting 3 Wayne R. LaFave, Search & Seizure § 6.6(b), at 474 (4th ed. 2004)). Thus, this Court concluded exigent circumstances justified the warrantless entry.

Here, the information known by the officers at the time of the entry supports the trial court's denial of the motion to suppress. The reported crime had just occurred. The purported victim told the officers that she had been robbed—a serious offense. Though no weapons were involved, the officers reasonably believed physical force was used as Braxton-Hicks did inform them that Holly had put her in a headlock and stolen money hidden in her bra. Furthermore, officers had reason to believe that Holly was still inside the room because Braxton-Hicks, who was waiting outside, told them she had not seen Holly leave. Though the door was open, there

were still places in the room where a person could hide.  Therefore, officers had a strong reason to believe that Holly was still inside the room.

Importantly, the officers limited the search to those places where a person could hide before immediately leaving the room and securing the premises.  See Hargraves, 37 Va. App. at 310 (A "warrantless search must be 'strictly circumscribed by the exigencies which justify its limitation.'" (quoting Mincey v. Arizona, 437 U.S. 385, 393 (1970))).  After being notified of a violent crime and told that the suspect may be on the scene, police were authorized to "make a prompt warrantless search of the area to see if . . . a [criminal] is still on the premises."  Id. at 311 (second alteration in original) (quoting Mincey, 437 U.S. at 392).  The police did not conduct a more extensive search, which would have required either a warrant or consent.

Because probable cause and exigent circumstances existed, the initial entry did not violate the Fourth Amendment.  Accordingly, the trial court correctly denied the motion to suppress.[3]

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

---

[3] Holly did not argue that he did not consent to the third search of his motel room or that his consent was involuntary.  He challenges his consent only as fruit of the initial unlawful entry.  Because we determined that the initial entry was lawful, we need not address the third search.