COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Humphreys
Argued at Chesapeake, Virginia


JOHN H. HILL, JR.

                                        OPINION BY
v.    Record No. 1783-00-1       JUDGE ROBERT P. FRANK
                                      OCTOBER 16, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                   Rodham T. Delk, Jr., Judge

        Denise Winborne, Assistant Public Defender
        (Office of the Public Defender, on brief),
        for appellant.

        Jennifer R. Franklin, Assistant Attorney
        General (Randolph A. Beales, Acting Attorney
        General; Richard B. Smith, Senior Assistant
        Attorney General, on brief), for appellee.


     John H. Hill, Jr., (appellant) was convicted in a bench trial

of assault and battery against a law enforcement officer, in

violation of Code § 18.2-57(C).[1]  On appeal, he contends that

---

     [1] Code § 18.2-57 states in part:

        C.  In addition, if any person commits an
        assault or an assault and battery against
        another knowing or having reason to know
        that such person is a law-enforcement
        officer as defined hereinafter, a
        correctional officer as defined in § 53.1-1,
        a person employed by the Department of
        Corrections directly involved in the care,
        treatment or supervision of inmates in the
        custody of the Department or a firefighter
        as defined in § 65.2-102, engaged in the
        performance of his public duties as such,
        such person shall be guilty of a Class 6

because he used reasonable force to repel an illegal arrest, the trial court erred in convicting him of the offense. For the reasons stated herein, we reverse the conviction.

I. BACKGROUND

On July 9, 1999, at approximately 1:21 a.m., Suffolk Police Officer K.I. Fromme received a report of an anonymous call that claimed two black males were displaying and dealing firearms in front of a green house in the 400 block of Briggs Street in the City of Suffolk. The report described one suspect as wearing a dark shirt, dark shorts, and a baseball cap; the other suspect was described as wearing jeans.

Officer Fromme, in uniform, arrived on the scene at 1:24 a.m. in a marked unit, and Officer Rupe arrived shortly thereafter. Officer Fromme observed appellant and another individual in front of a green house in the 400 block of Briggs Street. Appellant was wearing a baseball cap and dark blue sweatpants. As the officers approached, appellant was sitting in the driver's seat of a car with the door open. The other individual was standing near the

---

felony, and, upon conviction, the sentence of such person shall include a mandatory, minimum term of confinement for six months which mandatory, minimum term shall not be suspended, in whole or in part.

Nothing in this subsection shall be construed to affect the right of any person charged with a violation of this section from asserting and presenting evidence in support of any defenses to the charge that may be available under common law.

-

car. Neither appellant nor the other individual ran. The officers did not observe any suspicious activity.

The officers asked appellant to step out of the car. When he complied, Officer Fromme told appellant that he wanted to pat him down for weapons, and appellant refused. According to Officer Fromme, appellant did not have a choice about whether a pat-down would take place.

The officer attempted to frisk appellant. Appellant offered no resistance when Officer Fromme patted down his left side. However, when Officer Fromme attempted to pat down appellant's right side and noticed a bulge in his right pocket, appellant pushed the officer's hand away. Officer Fromme again explained to appellant that he was only "trying to make sure he did not have any weapons."

When Officer Fromme saw the bulge in appellant's pocket, he "did not know what he had in there." As the officer reached for the right pocket, appellant put his hand in his pocket and "would not remove it." Fromme then grabbed appellant's hand to remove it from the pocket. Appellant turned and attempted to run away. "When he turned and attempted to run away, he struck [the officer in the] mouth with his [open] hand." Officer Fromme testified at that point appellant was under arrest.

Officer Rupe testified that appellant was moving around trying to stop Officer Fromme from putting his hand in appellant's pocket. When Officer Fromme "went to put his hands on him he

-

turned, and when he turned around he slightly -- he actually slapped Officer Fromme in the mouth . . . ." Officer Rupe said appellant was trying to get away when he "smacked Officer Fromme."

Appellant ran a short distance before Officer Fromme caught him. Officers Duke and Rupe assisted Fromme in putting appellant on the ground. Appellant hit Officer Fromme "a couple of times" in the ensuing fight. Appellant testified, "I snatched [my hand] away and I accidentally hit him."

At trial, appellant argued he had a right to use reasonable force to repel an unlawful arrest. The trial court, while acknowledging the seizure was illegal, found the police acted in good faith and their actions were reasonable. Further, the trial court found the assault of Officer Fromme was "not proportionate to the actions of the officer in removing [appellant's] hands from his pocket." It was "not a reasonable response." The trial court stated:

> This was a simple pat-down. It never was
> represented to be anything other than that,
> and Officer Fromme was prevented from
> conducting what should have been a peaceable
> pat-down when the defendant just simply
> turned around and hit him in the mouth.

The trial court convicted appellant of assault and battery against a law enforcement officer.

## II. ANALYSIS

Appellant contends that because the pat-down and his subsequent arrest were illegal, he had a right to use reasonable

-

force to repel the police officer.  He argues he acted reasonably under the circumstances.[2]

Appellant and the Commonwealth both agree on the applicable law.  Although this case involves an illegal detention, as opposed to an illegal arrest, the law of resisting an illegal "arrest" applies in this context.

As we stated in Brown v. Commonwealth:

> It has long been held in Virginia that where an officer attempts an unlawful arrest, the officer is an aggressor which gives the arrestee the right to use self-defense to resist so long as the force used is reasonable.  See [Foote v. Commonwealth, 11 Va. App. 61, 69, 396 S.E.2d 851, 856 (1990)]; see also Annotation, Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest, 44 A.L.R.3d 1078 (1972). "[T]he amount of force used [always] must be reasonable in relation to the harm threatened."  Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989).

> When the issue on appeal is whether there is sufficient evidence to support a criminal conviction, we view conflicting evidence in the light most favorable to the Commonwealth.  However, when the issues are the lawfulness of an arrest and the reasonableness of force used to resist an unlawful arrest, the ultimate questions involve law and fact and are reviewed de novo on appeal.  See Foote, 11 Va. App. at 65, 396 S.E.2d at 853-54; see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citing

---

[2] The Commonwealth, on appeal, does not maintain the detention and arrest were lawful.  Our analysis, therefore, is limited to a determination of whether appellant's actions were "reasonable."

-

Ornelas v. United States, 517 U.S. 690, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996)).

27 Va. App. 111, 116-17, 497 S.E.2d 527, 530 (1998).

"The rules of self-defense determine whether the force used was reasonable." Foote, 11 Va. App. at 67, 396 S.E.2d at 855.

It is well established that "a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." Diffendal, 8 Va. App. at 421, 382 S.E.2d at 25 (citations omitted). However, such force "'shall not, except in extreme cases, endanger human life or do great bodily harm.'" Id. at 421, 382 S.E.2d at 26 (quoting Montgomery v. Commonwealth, 98 Va. 840, 843, 36 S.E. 371, 372 (1900)). "Moreover, the amount of force used must be reasonable in relation to the harm threatened." Id.

We then must determine whether appellant's intentional "slapping"[3] of Officer Fromme in the mouth with an open hand was reasonable in relation to the officer's assault on appellant. Clearly, it was.

The evidence proved that Officer Fromme, without reasonable suspicion, attempted to pat down appellant. This unlawful

---

[3] The trial court found appellant's actions were intentional, not accidental. We are bound by that factual finding. See Christian v. Commonwealth, 33 Va. App. 704, 709, 536 S.E.2d 477, 480 (2000) (en banc) (explaining that appellate courts are bound by a trial court's factual findings when reviewing legal determinations).

-

action was an illegal detention and search and, therefore, an assault.  As we stated in Perkins v. Commonwealth:

> An assault and battery is the unlawful touching of another.  See Gnadt v. Commonwealth, 27 Va. App. 148, 151, 497 S.E.2d 887, 888 (1998).  Assault and battery is "the least touching of another, willfully or in anger."  Roger D. Groot, Criminal Offenses and Defenses in Virginia 29 (4th ed. 1998) . . . .

31 Va. App. 326, 330, 523 S.E.2d 512, 513 (2000).

As the officer attempted to pat down appellant's right side, appellant pushed his hand away.  Then, Officer Fromme grabbed appellant's hand as appellant was putting it into his pocket.  Appellant turned around to get away.  As Officer Rupe testified, appellant was trying to get away when he "smacked" Officer Fromme.  Clearly, the officer conveyed to appellant he was not free to leave and seized him without reasonable suspicion, as the trial court found.  See Florida v. J. L., 529 U.S. 266, 270-73 (2000) (finding an anonymous call, with no indication of reliability, alleging that a juvenile, standing at a particular street corner and wearing particular clothing, had a gun did not provide police with reasonable suspicion to stop and search the juvenile).

At this point, given the police held appellant against his will and without reasonable suspicion or probable cause, appellant was illegally detained.  Therefore, he was entitled to resist the detention with reasonable force.  See, e.g., Dennis

-

v. State, 674 A.2d 928, 935-36 (Md.), <u>rev'd and remanded for</u> <u>recons. sub nom.</u> Maryland v. Dennis, 519 U.S. 802 (1996), <u>aff'd</u>, 693 A.2d 1150 (Md. 1997) (finding an officer had no reasonable, articulable suspicion for a <u>Terry</u> stop, therefore, the suspect had the right to resist the illegal forcible detention).

At no time did appellant use excessive force.  When he struck the officer, he did so with an open hand.  He did not aggressively pursue or attack the officer.  The officer was struck only as appellant attempted to get away from the officer's assault.

After appellant ran, he was pursued by Officer Fromme. When Officer Fromme caught him, all three officers tried to put him on the ground.  Appellant hit Officer Fromme during this scuffle.  Again, this action was reasonable.

The Commonwealth invites us to repudiate this defense, urging that an individual facing illegal arrest "should contest the arrest in court and not in the streets."  In its brief, the Commonwealth maintains:

> "[T]he right to resist an illegal arrest is
> in its legal death throes."  <u>Resisting</u>
> <u>Unlawful Arrests:  Inviting Anarchy or</u>
> <u>Protecting Individual Freedom?</u>  46 <u>Drake L.</u>
> <u>Rev</u>. 383 (1997).  This is because:

> "[C]ourts and legislatures have terminated
> the right to forcibly resist unlawful arrest
> because legal and societal circumstances
> have changed dramatically since the
> inception of that right.  In the early
> development of the common law, physical
> resistance used to be an effective response

-

to the problem of unlawful arrest.  There
were few if any means of effective redress
for unlawful arrest.  <u>None of these reasons
remains valid today</u>.

<u>State v. Hobson</u>, 577 N.W.2d 825, 835 (Wisc.
1998) . . . .

The Supreme Court of Virginia, addressing a different

common law concept, articulated several reasons why courts

should not change the common law.

We believe that the decision whether a
common law rule of such ancient vintage as
the one at bar should be reversed is one
properly within the province of the General
Assembly.  The issue involves a multitude of
competing economic, cultural, and societal
values which courts are ill-equipped to
balance, a fact best illustrated by the
disparate conclusions reached by the several
courts which have tinkered with the common
law rule.  On the other hand, the
legislative machinery is specially geared to
the task.  A legislative change in the law
is initiated by introduction of a bill which
serves as public notice to all concerned.
The legislature serves as a forum for
witnesses representing interests directly
affected by the decision.  The issue is
tried and tested in the crucible of public
debate.  The decision reached by the chosen
representatives of the people reflects the
will of the body politic.  And when the
decision is likely to disrupt the historic
balance of competing values, its effective
date can be postponed to give the public
time to make necessary adjustments.

<u>Bruce Farms, Inc. v. Coupe</u>, 219 Va. 287, 293, 247 S.E.2d 400,

404 (1978).

We agree with the Supreme Court of Virginia and decline the Commonwealth's invitation to abrogate this doctrine.[4]  We find that appellant's response to an illegal detention and search was reasonable and proportionate to the conduct of the police.  We, therefore, reverse appellant's conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>

---

[4] Further, this Court has no authority to overrule decisions of the Supreme Court of Virginia.  <u>See</u> Code § 17.1-406.

-