PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 012526   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                     November 1, 2002
JOHN HOWARD HILL, JR.


                FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider whether the Court of Appeals

erred in reversing a defendant's conviction and dismissing an

indictment on the ground that the common law right to use

reasonable force to resist an illegal arrest also confers a

right to use reasonable force to resist an illegal detention.

     John H. Hill, Jr., was indicted for assault and battery of

a law enforcement officer, in violation of Code § 18.2-57(C).

Hill was accused of striking Officer K. I. Fromme of the City of

Suffolk Police Department while Fromme was attempting to conduct

a "pat down" search of Hill to determine whether he was carrying

a weapon.  Hill was convicted of the offense in the Circuit

Court of the City of Suffolk.  The court sentenced him to a term

of three years' imprisonment and suspended two and one-half

years of that sentence.

     Hill appealed from his conviction to the Court of Appeals,

which reversed the trial court's judgment and dismissed the

indictment.  Hill v. Commonwealth, 37 Va. App. 1, 9, 553 S.E.2d

529, 533 (2001).  The Court of Appeals concluded, among other

things, that Hill's physical resistance "to an illegal detention and search was reasonable and proportionate to the conduct of the police."  Id.  The Commonwealth appeals the Court of Appeals' judgment.

Under established principles of appellate review, we will state the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.  Armstrong v. Commonwealth, 263 Va. 573, 576, 562 S.E.2d 139, 140 (2002); Stephens v. Commonwealth, 263 Va. 58, 59-60, 557 S.E.2d 227, 228 (2002). The evidence showed that on July 9, 1999, at 1:21 a.m., Officer Fromme received a dispatch report, which was based on an anonymous telephone call, stating that two black males were "possibly dealing firearms" in front of a green house in the 400 block of Briggs Street.  Fromme was familiar with that part of Briggs Street as "an area where drugs are bought and sold."  A few minutes later, he arrived at the scene and was met shortly thereafter by two other police officers.

At that time, Officer Fromme saw Hill sitting in the driver's seat of a car, which had the driver's side door opened and was parked in front of a green house in the 400 block of Briggs Street.  The officers did not observe any suspicious activity as they approached the car.  Hill and his companion did

2

not attempt to run away and Hill complied with the officers' request that he get out of the car.

Officer Fromme explained to the two men that he had received a complaint about two suspects "possibly dealing weapons," and that, for reasons concerning safety, he wanted to "pat them down" to determine whether they carried any firearms. Fromme "patted down" Hill's left side without encountering any resistance from Hill. However, as Fromme attempted to "pat down" Hill's right side, Fromme noticed a bulge in the right pocket of Hill's pants. Hill pushed Fromme's hand away in an attempt to prevent him from "patting down" that pocket.

Officer Fromme again told Hill that he only wanted to determine whether Hill carried any weapons. As Fromme reached toward the right pocket of Hill's pants, Hill placed his hand in that pocket. When Fromme grabbed Hill's hand and removed it from the pocket, Hill turned and tried to run away.

As Hill turned away from Officer Fromme, he struck the officer in the mouth with his open hand, splitting Fromme's lip. Hill was able to run a short distance before all three officers struggled with him in an attempt to force him to the ground and restrain him. During the struggle, Hill struck Fromme "a couple of times" before the officers were able to place Hill in handcuffs.

Officer Fromme searched the right pocket of Hill's pants and discovered "a corner of a plastic baggie" concealed inside of a black pen cap. The plastic baggie contained about 0.17 grams of cocaine. In Hill's right hand, Officer Fromme discovered a film canister containing five "rocks" of crack cocaine, which weighed a total of 5.01 grams. The officers did not find any weapons on Hill's person or in the vehicle he had occupied.

Before trial, Hill filed a motion to suppress the seized evidence on the ground that his detention was illegal because Officer Fromme did not have reasonable suspicion that Hill was armed and dangerous or was involved in any criminal activity. At a hearing that was later made part of the trial record, Hill testified that he consented to a "pat down" search for weapons, and that he did not resist Fromme's actions until Fromme tried to reach into Hill's pocket. Hill also testified that he "accidentally hit" Fromme while attempting to run away.

The trial court denied Hill's motion. The court concluded that given the nature of the dispatch report, Officer Fromme "made a reasonable pat down or attempt at a pat down for officer safety. And it was the [resistance to] that pat down that led to . . . the arrest."

In a bench trial, the court found Hill guilty of the felonious assault charge. After this conviction, but before

Hill's sentencing, the United States Supreme Court published Florida v. J.L., 529 U.S. 266 (2000).

In J.L., the Court considered the issue "whether an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person." Id. at 268. The Court concluded that "reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id. at 272. The Court held that "an anonymous tip lacking indicia of reliability . . . does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." Id. at 274.

Before his sentencing hearing, Hill filed a motion to set aside his conviction, relying on the Supreme Court's holding in J.L. The trial court concluded that under the decision in J.L., Hill was unlawfully detained. However, the court held that Hill's actions were unlawful because his resistance was disproportionate to Officer Fromme's attempt to remove Hill's hand from his pocket. On this basis, the court denied the motion to set aside the conviction.

In his appeal to the Court of Appeals, Hill argued that his conviction should be reversed "because he used reasonable force to repel an illegal arrest." Hill, 37 Va. App. at 2-3, 553 S.E.2d at 530. The Court of Appeals concluded that Hill was the

5

subject of an illegal detention, not an illegal arrest. Id. at 5, 553 S.E.2d at 531. However, the Court held that the common law doctrine allowing an individual to use reasonable force to resist an illegal arrest applies also to a detainee's efforts to resist an illegal detention. Id. at 5-6, 553 S.E.2d at 531-32.

The Court further concluded that Hill did not use excessive force to resist the detention because he struck Officer Fromme with an "open hand," he "did not aggressively pursue or attack" Fromme, and he only struck Fromme in attempting "to get away from the officer's assault." Id. at 7, 553 S.E.2d at 532. Based on this holding, the Court reversed Hill's conviction and dismissed the indictment. Id. at 9, 553 S.E.2d at 533.

On appeal to this Court, the Commonwealth argues that the Court of Appeals erred in extending the common law right to use reasonable force to resist an unlawful arrest to an incident involving only an unlawful detention. The Commonwealth asserts that there is a significant distinction between a detention and an arrest because a detention involves only a temporary deprivation of the detainee's liberty, while an arrest is the initial stage of a criminal prosecution that restricts the arrested person's freedom for an extended period of time. The Commonwealth contends that a rule permitting a detainee to resist an illegal detention would escalate the danger of violence to law enforcement officers engaged in the reasonable

6

performance of their duties.  Thus, the Commonwealth maintains that the determination whether a detention is legal "should be left solely to the courts, not the fist of the suspect."

In response, Hill argues that the "pat down" search conducted by Officer Fromme was unlawful because he did not have a basis for concluding that Hill may have been armed and dangerous or engaged in criminal activity.  Hill contends that Fromme's actions gave Hill the right to use reasonable force to resist the unlawful detention and search.  We disagree with Hill's arguments.

We first observe that the trial court held that Officer Fromme acted illegally when he detained Hill based on an anonymous tip.  The Commonwealth did not challenge this ruling either in the trial court or in the Court of Appeals. Therefore, we do not consider that issue and restrict our analysis to the question whether the common law right to use reasonable force to resist an illegal arrest is applicable to the use of such force to resist an illegal detention.

This issue presents a pure question of law.  Thus, we do not give deference to the trial court's conclusions on the subject, and we are permitted the same opportunity as the trial court to consider that question of law.  See Lee County v. Town of St. Charles, 264 Va. 344, 347-48, 568 S.E.2d 680, 682 (2002);

7

_Musselman v. Glass Works, L.L.C._, 260 Va. 342, 346, 533 S.E.2d 919, 921 (2000).

We conclude that the law of this Commonwealth, including the common law of England incorporated into our Code by § 1-10, does not provide a basis for recognizing a common law right to use force to resist an illegal detention. In the absence of authority requiring such a right, we perceive no reason for enlarging, by judicial decision, the scope of the common law on this subject.

Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest. See _Banner v. Commonwealth_, 204 Va. 640, 646-47, 133 S.E.2d 305, 309-10 (1963); _Brown v. Commonwealth_, 27 Va. App. 111, 116-17, 497 S.E.2d 527, 530 (1998). The underlying rationale supporting this common law right is the "provocation" of an illegal arrest, which operates to excuse an assault directed at thwarting the unlawful arrest. See _Rodgers v. State_, 373 A.2d 944, 947 (Md. 1977); _State v. Hobson_, 577 N.W.2d 825, 830 (Wis. 1998). An unlawful arrest was considered a great provocation at common law because of the dire consequences, including incarceration of extreme duration, which often resulted before an accused was permitted a trial for the charged offense. See _State v. Valentine_, 935 P.2d 1294, 1300-01 (Wash. 1997); see also _State_

8

v. Gardiner, 814 P.2d 568, 572 (Utah 1991); Hobson, 577 N.W.2d at 835.

This historical impetus underlying the common law right to resist an illegal arrest does not raise corresponding concerns in the context of a contemporary investigative detention. In our present justice system, the different consequences that attend an arrest and an investigative detention are manifest. As the Supreme Court stated in Terry v. Ohio, 392 U.S. 1 (1968):

> An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.

Id. at 26. After an arrest, a citizen's liberty is completely constrained, at a minimum, until a judicial officer has determined the issue of bail. Police and court records permanently record the event of an arrest, which becomes an indelible part of a citizen's history unless a court order later is issued expunging those arrest records.[1]

---

[1] See Code § 19.2-392.2, which permits a circuit court to order the expungement of police and court records upon certain findings when a person is charged with the commission of a crime and is acquitted, when the charge is dismissed or a nolle prosequi is taken, or when an absolute pardon is granted.

In contrast, a protective search for weapons or other investigative detention constitutes a brief, though not inconsequential, restriction on an individual's freedom of movement.  See Terry, 392 U.S. at 24-26.  Such detentions are informal encounters that generally are not the subject of any public record.

Because a detention is, by its nature, a brief intrusion on an individual's liberty, the provocation resulting from an illegal detention is far less significant than the provocation that attends an illegal arrest.  Thus, recognition of a right to resist an unlawful detention would not advance the rationale supporting the common law right to use reasonable force to resist an unlawful arrest, but would only serve to increase the danger of violence inherent in such detentions.[2]  "Close questions as to whether an officer possesses articulable suspicion must be resolved in the courtroom and not fought out on the streets."  State v. Wiegmann, 714 A.2d 841, 849-50 (Md. 1998) (quoting State v. Blackman, 617 A.2d 619, 630 (Md. App. 1992)).

Accordingly, we hold that a person in this Commonwealth does not have the right to use force to resist an unlawful

_____

    [2] We note that the overall trend in a majority of states has been toward abrogation of the common law right to use reasonable force to resist an unlawful arrest.  See Valentine, 935 P.2d at

10

detention or "pat down" search.  Thus, in the present case, Hill did not have the right to use force to resist the challenged detention and "pat down" search by Officer Fromme, and the Court of Appeals erred in reaching a contrary conclusion.

For these reasons, we will reverse the judgment of the Court of Appeals, and we will reinstate Hill's conviction in accordance with the trial court's judgment order because the trial court reached the correct result in this case, although for the wrong reason.  See Frye v. Commonwealth, 231 Va. 370, 389, 345 S.E.2d 267, 281 (1986); Thims v. Commonwealth, 218 Va. 85, 93, 235 S.E.2d 443, 447 (1977).

Reversed and final judgment.

---

1302; Hobson, 577 N.W.2d at 834-35.  That issue is not before us here.