COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Felton and Kelsey
Argued at Richmond, Virginia


JAVON MONTRELL BATTLE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 3019-01-2       JUDGE WALTER S. FELTON, JR.
                                       DECEMBER 31, 2002
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Margaret P. Spencer, Judge

          Gregory W. Franklin, Assistant Public
          Defender (Office of the Public Defender, on
          briefs), for appellant.

          Michael T. Judge, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Javon Battle was convicted in a bench trial of assaulting a

police officer in violation of Code § 18.2-57(C).  On appeal, he

contends that (1) the evidence was insufficient to support his

conviction because his resistance to Officer Brereton's illegal

seizure was lawful; and (2) the trial court erred in failing to

suspend the final judgment to allow it to reconsider the case

and render a decision on the merits.  We affirm.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.   BACKGROUND

### A.   THE OFFENSE

At approximately noon on March 16, 2001, Officer William C. Brereton of the Richmond Police Department was on patrol in the Gilpin Court area when he came in contact with Battle. Officer Brereton spotted Battle and two other males, Mr. Whitaker and an unnamed male, on the second floor landing of a building on Federal Street. As he drove his police car past the building, he made eye contact with the three causing them to "move[] back away into the shadows of the landing." Officer Brereton parked his police car around the corner where it was no longer visible from the landing and approached Battle, Whitaker, and the unnamed male on foot. He was investigating the possibility that all three were trespassing and that Battle was truant from school.

The buildings in the Gilpin Court area were clearly marked with Richmond Redevelopment and Housing Authority ("RRHA") "No Trespassing" signs. Alone, Officer Brereton approached Battle, Whitaker, and the unnamed male. He was in uniform and displaying his badge of authority. As he approached, he told them he needed to speak to them. He asked if any of them lived in that building. Battle did not respond. However, Whitaker stated his girlfriend lived there. When asked which apartment, Whitaker could not provide an answer. At that time, Officer

-

Brereton allowed the unnamed male, whom he knew, to leave so he would only "have to deal with two people."

Subsequently, Battle attempted "two or three times to walk away." Officer Brereton had to raise his voice and tell Battle he needed to stay where he was. Battle continued to walk at which point Officer Brereton told them he was going to walk them down to the police car to check their names for warrants and to determine if they lived there. Officer Brereton walked them to the car, holding the bottom of their shirts. When they arrived at the car he asked Battle and Whitaker to place their hands on the car in order for him to pat them down for weapons to ensure his safety.

Whitaker attempted to walk away. When Officer Brereton tried to pull Whitaker back, Battle took off at a full run. Still holding Battle by the shirt, Officer Brereton pulled Battle back. Battle turned toward him and began punching and scratching Officer Brereton's hand and arm. Officer Brereton was cut, resulting in scars from the altercation. Battle then began punching Officer Brereton in the chest at which time he got Battle on his back, on the ground. While attempting to flip Battle on his stomach to handcuff him, Battle began kicking Officer Brereton in his legs, chest, and groin.

During the struggle, Battle screamed for Officer Brereton to "get the f*** off me." He then began to scream that "this cop is beating me. Somebody come over here and help me."

-

Battle then reached into his pants pocket for something Officer Brereton believed was a weapon. Officer Brereton attempted to pull Battle's hand out of his pocket, but could not. As a result, he drew his service weapon. Officer Brereton then ordered Battle to take his hand out of his pocket. Battle would not and continued fighting him. Officer Brereton re-holstered his service weapon and tried to keep Battle's hand in his pocket. He also attempted to handcuff Battle's other hand. Battle continued screaming for help.

At that point, Officer Brereton looked up and noticed approximately a hundred people had gathered. He stated that during the struggle someone shoved him from behind, which allowed Battle to get to his feet. Officer Brereton tackled Battle, and several bottles were thrown from the crowd. Battle continued to fight, kicking Officer Brereton in the legs, chest, and groin. Officer Brereton then attempted to spray Battle with mace, but failed because someone in the crowd warned Battle. Battle covered his eyes and managed to knock the mace canister from Officer Brereton's hand. Battle was once again able to get to his feet and charged Officer Brereton. Battle attempted to tackle Officer Brereton by grabbing him behind the knees with his head between the officer's legs. As a result, Officer Brereton deployed his asp and struck Battle once on the back of

-

his legs.[1]  Battle fell to his knees, then got back up.  He again attempted to tackle Officer Brereton.  Officer Brereton struck him again in the back of the legs.

The crowd began to move closer, and threats were made from the crowd.  Officer Brereton turned his attention to the crowd and told them to get back.  Battle got to his feet, and the struggle continued.  Officer Brereton grabbed Battle by his clothing, but he was able to pull out of his two shirts and his jacket.  Battle fled, and Officer Brereton pursued him a short distance down St. John Street.  However, Officer Brereton had to halt his pursuit because the crowd began chasing him.  He called for backup and turned his attention toward the crowd.

Officer Brereton was able to determine that Battle was not a resident of Gilpin Court, but that he had a grandmother that lived nearby on Hill Street.  He and other officers proceeded to Hill Street and found Battle, wearing the same pants but a different shirt.  Battle was arrested and charged with assaulting a police officer, in violation of Code § 18.2-57(C).

B.   TRIAL AND MOTION TO RECONSIDER AND VACATE

At his bench trial, Battle testified in his own behalf. Battle stated that Officer Brereton initially referred to him as "Shawn."  He claimed he told Officer Brereton that Shawn was not his name and he attempted to walk away.  He admitted attempting

---

[1] An asp is a tactical, expandable baton used by the police, similar in nature to a traditional nightstick.

-

to get away several times afterwards.  Battle claimed that Officer Brereton attempted to slam him on the car trunk, but he landed on the ground instead.  Officer Brereton then pinned him to the ground by placing his knees in his back.  Battle further claimed that Officer Brereton had him by the collar of his shirt and was choking him.

Battle admitted struggling with Officer Brereton, but denied ever kicking him, hitting him in the hand or chest, calling out for help, or telling Officer Brereton to "get the f*** off me."  Battle also denied having his hand in his pocket or having drugs in his pocket.  However, he admitted that on the same day he struggled with Officer Brereton, he was charged with possessing six rocks of crack cocaine and later pleaded guilty to the charge.  Battle further admitted that he did not live in Gilpin Court.

Battle was found guilty of assaulting a police officer. The court entered a final conviction and sentencing order on October 9, 2001.  On October 24, 2001, Battle filed a motion to reconsider and vacate his conviction.  The motion cited recent authority in support of his motion to set aside the conviction based on his assertion that he was legally resisting detention that was not supported by reasonable suspicion.[2]  The motion was

_____

[2] Battle cited, what was then, the recently decided cases of Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001); Hill v. Commonwealth, 37 Va. App. 1, 553 S.E.2d 529 (2001), rev'd, 264 Va. 541, 570 S.E.2d 805 (2002); and Hicks v. Commonwealth,

-

heard on October 25, 2001.  The court stated it would take the
matter under advisement and directed Battle's attorney to
provide the court with the transcript of the trial proceedings.
The following colloquy ensued:

> MS. McCONNELL  [Battle's attorney]:  And in
> that case will you stay the 21 days?
>
> THE COURT:  Yes.  The motion was filed prior
> to the 21-day period.
>
> MS. McCONNELL:  Thank you very much.

On October 25, 2001, the trial court entered an order stating
the motion was taken under advisement.  It did not, however,
suspend the twenty-one days or vacate the final judgment order.
The sentencing order became final upon the expiration of the
twenty-one days.

## II.  SUFFICIENCY OF THE EVIDENCE

We first consider whether the evidence was sufficient to
support Battle's conviction of assaulting a police officer.

> When the sufficiency of the evidence is
> challenged on appeal, it is well established
> that we must view the evidence in the light
> most favorable to the Commonwealth, granting
> to it all reasonable inferences fairly
> deducible therefrom.  The conviction will be
> disturbed only if plainly wrong or without
> evidence to support it.

Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196
(1992).  Battle contends that the evidence was insufficient

---

36 Va. App. 49, 548 S.E.2d 249 (2001), aff'd on other grounds,
264 Va. 48, 563 S.E.2d 674 (2002).

-

because he was resisting an unlawful detention by Officer Brereton. Assuming, without deciding, that Battle was the subject of an unlawful detention, he possessed no right to use force to resist the detention or "pat down" search. The recent Supreme Court decision in Commonwealth v. Hill, 264 Va. 541, 570 S.E.2d 805 (2002), is determinative on this issue.

In Hill, the defendant was indicted for assault and battery of a law enforcement officer. Hill was the subject of a "pat down" search by a police officer to determine if he was carrying a weapon. During the pat down, the officer noticed a bulge in Hill's right pants pocket. As the officer attempted to pat down the pocket, Hill pushed the officer's hand away. The officer again attempted to pat down the right pants pocket, and Hill put his hand in that pocket. When the officer grabbed Hill's hand and removed it, Hill turned and tried to run away. In the process, he struck the officer in the mouth with his open hand, splitting the officer's lip. A panel of this Court determined that Hill had been illegally detained and that the force used in resisting that detention was lawful. Hill v. Commonwealth, 37 Va. App. 1, 9, 553 S.E.2d 529, 533 (2001).

Reversing our decision, the Supreme Court held that a person does not have the right to use force to resist an unlawful detention or "pat down" search. Hill, 264 Va. at 548, 570 S.E.2d at 809. The Court reasoned that

-

> [b]ecause a detention is, by its nature, a
> brief intrusion on an individual's liberty,
> the provocation resulting from an illegal
> detention is far less significant than the
> provocation that attends an illegal arrest.
> Thus, recognition of a right to resist an
> unlawful detention would not advance the
> rationale supporting the common law right to
> use reasonable force to resist an unlawful
> arrest, but would only serve to increase the
> danger of violence inherent in such
> detentions.

Id. at 548, 570 S.E.2d at 808-09.

Regardless of whether Battle's detention was unlawful or not, he was not entitled to use force to resist the detention. Thus, the evidence was sufficient beyond a reasonable doubt to sustain his conviction of assaulting a police officer.

### III.   FAILURE TO SUSPEND FINAL JUDGMENT

We next consider whether the trial court erred in failing to suspend the final judgment to allow the court to consider a post-trial motion.  Rule 1:1 states in pertinent part:

> All final judgments, orders, and decrees,
> irrespective of terms of court, shall remain
> under the control of the trial court and
> subject to be modified, vacated, or
> suspended for twenty-one days after the date
> of entry, and no longer. . . .  The date of
> entry of any final judgment, order, or
> decree shall be the date the judgment,
> order, or decree is signed by the judge.

Battle argues that he was denied due process by the trial court's failure to make good on its ruling to suspend the final judgment order.  We disagree.

-

In Berean Law Group, P.C. v. Cox, 259 Va. 622, 528 S.E.2d 108 (2000), the trial court entered an order on September 24, 1998, stating that the defendant's demurrers would be sustained and Cox's action against the defendants dismissed unless Cox filed an amended motion for judgment on or before September 17, 1998. Subsequent to the September 1998 order, the circuit court agreed orally during a phone conference with all counsel to permit Cox to file an amended motion for judgment on a date later than the date specified in the September 24, 1998 written order. On November 16, 1998, Cox filed the amended motion for judgment. The defendants filed a motion to reject and dismiss Cox's amended motion for judgment arguing that more than twenty-one days had elapsed from the entry of the September 24, 1998 order. The trial court considered counsel's arguments and in an April 1999 order, permitted Cox to nonsuit his action. Id. at 624-25, 528 S.E.2d at 109-10.

On appeal, the Supreme Court held that allowing Cox to nonsuit his action was in error. According to the Court, the circuit court lost control of the September 24, 1998 order pursuant to Rule 1:1. No written order was entered that modified, vacated, or suspended the September 24, 1998 order. It is true that there was an oral agreement to permit Cox to file an amended motion for judgment after the specified date in the September 24, 1998 order. However, "the circuit court's

-

oral ruling cannot nullify its written final order, and it was incumbent upon the plaintiff to submit timely a written order to the circuit court suspending, modifying, or vacating the September 24, 1998 order . . . ." Id. at 111, 528 S.E.2d at 627.

As in Cox, no written order suspending, modifying, or vacating the twenty-one day period was entered prior to expiration of the twenty-one days. The trial court lost control over the final order on October 30, 2001, twenty-one days after its entry. The fact the trial court orally agreed it would suspend the final judgment in this case is of no consequence since the trial court's oral ruling cannot nullify its written order. It was Battle's responsibility to submit a timely written order to the trial court suspending, modifying, or vacating the October 9, 2001 order.

Although Battle procedurally defaulted in failing to submit a written order to the trial court suspending the final order, that issue is rendered moot by the fact that he properly preserved for appeal the issue of justifiable resistance to an illegal detention. That issue is disposed of in this opinion. As a general rule, "'[m]oot questions are not justiciable and courts do not rule on such questions to avoid issuing advisory opinions.'" In re Times-World Corp., 7 Va. App. 317, 323, 373 S.E.2d

-

474, 477 (1988) (quoting United States v. Peters, 754 F.2d 753, 757 (7th Cir. 1985)).

The judgment of the trial court is affirmed.

Affirmed.