COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Kelsey and Huff
Argued at Chesapeake, Virginia


CALVIN TERRELL COOPER

                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2355-10-1              JUDGE GLEN A. HUFF
                                           NOVEMBER 8, 2011
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        John R. Doyle, III, Judge

          J. Barry McCracken, Assistant Public Defender (Office of the Public
          Defender, on brief), for appellant.

          Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


     Calvin Terrell Cooper ("appellant") appeals his conviction of assault and battery of a law

enforcement officer in the performance of his duties, in violation of Code § 18.2-57(C).

Following the bench trial in the Circuit Court for the City of Norfolk ("trial court"), appellant

was sentenced to one year and six months in prison, with all but eight months suspended.  On

appeal, appellant contends that the trial court erred in denying his motions to strike and in

convicting him of assault and battery of a law enforcement officer in that he was lawfully

entitled to physically resist the restraint of his person by Officer Martynov, and his actions

constituted an exercise of reasonable force to repel such restraint.  For the following reasons, we

affirm the trial court's decision.

_____

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

On March 9, 2010, Officer Alexander V. Martynov ("Martynov"), of the Norfolk Police Department, went to 2901 Gatehouse Road pursuant to a call to the police department. He was dressed in his uniform, and arrived in his patrol vehicle. When he reached 2901 Gatehouse Road, Ms. Evans, the individual who called the police department, informed Martynov that she was concerned about where the appellant, her grandson, and his young daughter were because she was unable to reach appellant on his cellular phone. While Ms. Evans was concerned, she remained calm during her interaction with Martynov.

Shortly after Martynov arrived, appellant entered Ms. Evans's home alone, and was in an agitated state. Ms. Evans and Martynov asked appellant where his daughter was, and the three of them went outside to the back of the house where a vehicle was parked with a two- or three-year-old female child sitting in the backseat wearing a seat belt, but not in a child seat. Appellant removed the child, his daughter, from the vehicle, and Ms. Evans began to ask repeatedly if she could have the child so that she could change the child's diaper. As they returned to the house, appellant held on to the child with his right hand, and refused to let Ms. Evans have her. Martynov asked appellant for his identification card as they were walking back towards the house, ran the information on his police radio, and found that there were no pending warrants for appellant. Martynov testified that at

---

[1] As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

that point, appellant was "angry and agitated, talking in a . . . loud and irate tone of voice," so Martynov continued to follow them.

After re-entering the house, appellant remained in an agitated state, spoke in a loud tone of voice to Ms. Evans, and refused to let her take the child. Based on appellant's behavior, Martynov decided to detain appellant "for further investigation of what was going on," and "wanted to place [appellant] in the handcuffs for the safety of him, his child, and everybody else on the scene." Martynov grabbed appellant's left arm, placed a handcuff on his left wrist, and demanded that appellant let go of his daughter's hand and give him his right arm so that he could secure both of appellant's hands. When appellant refused to comply, Martynov attempted to secure appellant's right hand through the use of the "goose-neck technique."[2] Appellant resisted Martynov's attempt at the "goose-neck technique," and broke loose.

Appellant then grabbed Martynov by his upper body, and dragged him across "approximately two-thirds" of the living room while stating, "I don't need to be treated as a child." After being dragged and shoved across the living room by appellant, knocking over some furniture, and breaking a piece of furniture in the process, Martynov fell into an armchair. At that point, Ms. Evans attempted to grab appellant from behind, and Martynov was able to push appellant away from him. Martynov immediately pulled out his Taser gun, and pointed it at appellant. Appellant responded by stating, "[p]lease don't tase me," laid down on the ground on his stomach, placed his hands behind his back, and permitted Martynov to place the handcuff on his right wrist. As a result of the scuffle, Martynov sustained a cracked rib, injury to a finger, and several bruises and abrasions. As a result of the injuries, Martynov was placed on modified duty.

---

[2] At trial, Martynov explained that police officers are trained to do the "goose-neck technique" as a pain compliance technique. He testified that the "goose-neck technique" involved applying pressure to the individual's wrist while holding his arm stationary with the application of such force that the individual is forced to the floor.

Martynov testified at trial that the reason he wanted to detain appellant was that "there was a two- or three-year-old child present, [appellant] is talking in a loud and irate tone of voice. He indicates with his verbiage that he is not going to comply, and I was feeling for my safety – I was concerned about the safety of the people, especially of the child." Martynov further testified that he did not try to arrest appellant, but that he was merely "trying to physically detain him pending the outcome of the investigation."

Appellant testified at trial that even though Martynov did not say he was under arrest at any point, he thought Martynov was attempting to arrest him when Martynov tried to place the handcuffs on his wrists without warning or explanation. Appellant also stated that he did not know what a detention was and that he repeatedly had asked Martynov why he was being arrested prior to the scuffle, which inquiries went unanswered.

Appellant renewed his motion to strike the evidence arguing that appellant was justified in using the amount of force he did in resisting the illegal arrest, but noted that if the trial court considered it a detention, the case law in Virginia is clear that you can't resist a detention. The trial court denied the motion finding that 1) "the limited seizure was justified"; and 2) even assuming that the seizure was not justified, "[appellant's] physical resistance was disproportionate and excessive." In denying the motion to strike, the trial court ruled,

> The reason [Martynov] put the handcuffs on [appellant] and did the limited seizure was to protect the child and protect the situation because he perceived that the defendant's agitated state presented a danger to the persons in the room.
>
> There's a community caretaker exception which does allow a seizure in situations like this, a limited seizure, to render aid and protect property and protect persons' well-being given this type of situation.

The trial court then found Martynov lawfully conducted the limited seizure of appellant in order to secure him so that he was no longer a threat to the safety of others and that appellant

- 4 -

unlawfully resisted the "legal limited seizure." The trial court also held that even assuming the limited seizure was not legal, appellant's "resistance was disproportional and excessive." The trial court then found appellant guilty of assault and battery of Martynov. This appeal followed.

## II.  STANDARD OF REVIEW

In a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted). "However, when the issues are the lawfulness of an arrest and the reasonableness of force used to resist an unlawful arrest, the ultimate questions involve law and fact and are reviewed *de novo* on appeal." Brown v. Commonwealth, 27 Va. App. 111, 117, 497 S.E.2d 527, 530 (1998) (citations omitted). "'In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Hamlin v. Commonwealth, 33 Va. App. 494, 498, 534 S.E.2d 363, 364 (2000) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)).

## III.  ANALYSIS

On appeal, appellant contends that the trial court erred in denying his motions to strike and in convicting him of assault and battery of a law enforcement officer. Specifically, appellant argues that he was not merely detained, but was unlawfully arrested, and thus, he was permitted to use reasonable force against the unlawful arrest of his person by Martynov. Further, he contends that his actions constituted an exercise of reasonable force to repel such unlawful restraint. Appellant conceded, however, at trial during his second motion to strike and on brief

that an individual does not have the right under Virginia law to resist a detention, whether lawful or unlawful, by committing an assault and battery on a police officer.

"Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest." Commonwealth v. Hill, 264 Va. 541, 546-47, 570 S.E.2d 805, 808 (2002) (citations omitted). However, "a person in this Commonwealth does not have the right to use force to resist an unlawful detention or 'pat down' search." Id. at 548, 570 S.E.2d at 809. Therefore, the present case turns on the question of whether appellant was under arrest or merely was being detained.

"The Fourth Amendment . . . protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Johnson v. Commonwealth, 26 Va. App. 674, 682, 496 S.E.2d 143, 147 (1998) (quoting U.S. Const. amend IV).

> Police-citizen confrontations generally fall into one of three categories. First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citations omitted).

Like Terry stops, investigatory activities conducted pursuant to the community caretaker function sometimes require temporary seizures in order to safeguard or secure persons and property. See Commonwealth v. Waters, 20 Va. App. 285, 289, 456 S.E.2d 527, 529 (1995) ("'[O]fficers may conduct investigative seizures in the routine execution of community caretaking functions, totally divorced from the detection or investigation of crime, so long as those seizures are reasonable.'" (citation omitted)).

Martynov's limited seizure of appellant through the use of handcuffs in this case did not transform the limited seizure into an arrest. Cf. McGee, 25 Va. App. at 200, 487 S.E.2d at 262 ("Brief, complete deprivations of a suspect's liberty, including handcuffing, do not 'convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" (quoting Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1994))). In addition, appellant's subjective view that he was under arrest when Martynov started putting the handcuffs on his wrists is insufficient to convert the limited seizure into an arrest. See Alston v. Commonwealth, 40 Va. App. 728, 742, 581 S.E.2d 245, 252 (2003) ("'The perception . . . that one is [in custody] is insufficient to convert a Terry stop into an arrest. A brief but complete restriction of liberty is valid under Terry.'" (alteration in original) (quoting United States v. Moore, 817 F.2d 1105, 1108 (4th Cir. 1987))).

Thus, under these circumstances, appellant was not under arrest, and Martynov was exercising a limited seizure when he placed the handcuffs on appellant's wrists. As appellant concedes, an individual is not afforded the right of self-defense to resist even an unlawful detention, and thus we do not reach the merits of whether the force appellant used against Martynov was reasonable. Hill, 264 Va. at 548, 570 S.E.2d at 809. Accordingly, we hold the trial court did not err, and we affirm the trial court's judgment that Martynov did not exceed the scope of a limited detention by placing handcuffs on appellant's wrists thereby precluding appellant from using force to resist the officer's limited detention.

Affirmed.