COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia


WAYNE MCKINNLY ROANE

                                         MEMORANDUM OPINION[*] BY
v.        Record No. 0971-23-1               JUDGE DANIEL E. ORTIZ
                                            AUGUST 20, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge Designate

Jason A.S. Drake, Assistant Public Defender, for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Upon a conditional guilty plea under *Alford*,[1] the trial court convicted Wayne McKinnly

Roane of possessing a firearm after a felony conviction and sentenced him to three years'

imprisonment with two years and five months suspended. Roane contends the trial court erred in

denying his motion to suppress evidence seized from him.[2] We disagree and affirm the trial court's

judgment.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] The Honorable Timothy S. Fisher presided at the hearing on Roane's motion to
suppress.

doing so, we discard any of Roane's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On September 21, 2021, Detective Thompson and Officer Torres were on patrol in a marked police vehicle in the area of Madison Avenue and 31st Street in Newport News. Disregarding a stop sign, Roane drove through the intersection and nearly collided with the police car. Officer Torres braked abruptly to avoid a crash and waved Roane's vehicle on to pass through the intersection. Intending to execute a traffic stop, the police turned right to follow Roane. By the time the police were behind Roane's car, he had parked on the side of the road along the curb and was exiting from the vehicle. The police did not activate the emergency lights or siren on their car.

As Detective Thompson got out of the police vehicle and called to Roane to stop, Roane continued walking, reaching the point where the sidewalk met the yard. Roane ignored the officer's repeated demands to stop. He walked across the sidewalk and yard and up the front steps to the doorway of a residence. Detective Thompson ordered Roane to stop at least five times. Roane questioned why the officers were stopping him. It appeared to Detective Thompson that Roane was knocking on the door and trying to enter the house. Detective Thompson repeated for him to stop because he was being detained for a traffic infraction. On the front porch, Detective Thompson grabbed Roane's arm and said that he was detained. Roane resisted and pulled back from the officer. Detective Thompson grasped one of Roane's arms and pulled him off the porch.[3]

The front door opened, and another man emerged from the house. He screamed at the officers to get off of his yard and threatened to assault them. He mentioned obtaining a gun from inside the house. Roane then tried to lunge back onto the porch. The officers continued to struggle

---

[3] Officer Torres denied that either he or Detective Thompson dragged Roane down the steps from the porch.

with Roane to pull him away from the house. The other man moved closer to Roane, who nodded his head downward. The other man reached down to Roane's waistband as if to retrieve something. The officers were concerned for their safety or the possible removal of evidence and ordered the other man to get away from Roane. Eventually, the officers pulled Roane away from the porch and the other man, but Roane continued to struggle and resist the officers' commands.

Because Roane continued to be combative, the police applied pepper spray. While all three were on the ground, Roane reached under his waistband and pulled out a handgun. Detective Thompson immediately pinned down Roane's hand, grabbed the gun, and gave it to Officer Torres. Detective Thompson then handcuffed Roane.

At the time of the incident, the police had no information that Roane lived at the home he tried to enter. The abstract of Roane's driving record did not reflect the same address where the altercation occurred. Following the incident, the police charged Roane with possessing a firearm by a convicted felon, obstruction of justice, and brandishing a firearm.

At the suppression hearing, Roane testified that he lived at the house where the incident occurred. He claimed that he was trying to unlock the door with a key when the police grabbed him. Roane admitted that he had a prior felony conviction.

The trial court found that the incident did not involve a traffic stop because Roane had stopped the car, got out, and was walking toward a house. The trial court further concluded that even if Roane was in the curtilage of the home, he was not entitled to resist the police officers and brandish a firearm and that his behavior was unlawful. Accordingly, the trial court denied the motion to suppress.

In accordance with the plea agreement, the trial court nolle prossed the obstructing justice and brandishing a firearm charges. The trial court convicted Roane of the remaining firearm charge, and this appeal followed.

ANALYSIS

Roane argues that because the police unlawfully detained him in the curtilage of his own home, the trial court improperly denied his motion to suppress. He asserts that the court should have suppressed any evidence obtained during the unlawful seizure because it was insufficiently attenuated from the officers' unlawful conduct.

"On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019) (quoting *Carlson v. Commonwealth*, 69 Va. App. 749, 757 (2019)). "[W]hen a defendant challenges the denial of a motion to suppress, he has the burden to show that the trial court's ruling constituted reversible error." *Adams v. Commonwealth*, 48 Va. App. 737, 745 (2006). "Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Nonetheless, in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), and subsequent cases, the Supreme Court has held that, consistent with the Fourth Amendment, police may "make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). It is thus lawful under the Fourth Amendment for a police officer to detain an individual upon reasonable, articulable suspicion that he is "involved in, or ha[s] recently been involved in, some form of criminal activity." *Hairston v. Commonwealth*, 67 Va. App. 552, 564 (2017) (emphasis omitted)

- 4 -

(quoting *Logan v. Commonwealth*, 19 Va. App. 437, 441 (1994) (en banc)). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. "As the Supreme Court has explained, a 'routine traffic stop' is a Fourth Amendment seizure akin to a so-called *Terry* stop." *United States v. Ramirez-Jimenez*, 652 F. App'x 211, 214 (4th Cir. 2016). "To justify [a] traffic stop, an officer must have reasonable suspicion that the person stopped committed a crime or traffic violation." *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019). "In determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity, a court must consider the totality of circumstances." *Parker v. Commonwealth*, 255 Va. 96, 104 (1998).

We begin by considering the police officers' actions after witnessing Roane's traffic violation. A traffic infraction is treated as a misdemeanor for purposes of arrest. Code § 46.2-937. Upon observing Roane drive through an intersection without obeying a stop sign, it was lawful for the police officers to detain him for a traffic violation. *See* Code § 46.2-821.[4] In fact, the police had to brake abruptly to avoid a collision with Roane. After Roane passed through the intersection, the police then turned right to follow him with the intent to execute a stop for the infraction. But before they could do so, Roane parked his vehicle, exited the car, and began walking toward a house. Just after exiting the police car, Detective Thompson called to Roane to stop because he was being detained for a traffic infraction. Roane disregarded the detective's repeated commands to stop.

Here, instead of obeying the officers' commands Roane crossed the yard, went up the front steps, and tried to enter a house. After repeated commands to stop, Detective Thompson

---

[4] Under Code § 46.2-821, the driver of a vehicle must stop when approaching an intersection controlled by a stop sign and, before proceeding, yield the right-of-way to approaching drivers.

followed and, when Roane continued to ignore the commands, placed his hand on Roane to detain him.

Although "[u]nder the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest," once Detective Thompson physically detained Roane, he did not have a right to resist as he did. *Commonwealth v. Hill*, 264 Va. 541, 546 (2002). This is because, unlike an arrest, an "investigative detention constitutes a brief, though not inconsequential, restriction on an individual's freedom of movement," and in Virginia, a person, "does not have the right to use force to resist" any detention, lawful or unlawful. *Id.* at 547-48. Roane resisted when Detective Thompson grabbed his arm and when the officers pulled him from the porch and restrained him on the ground.

Even if we assume for the sake of argument that the police detained Roane unlawfully in the curtilage of his home, the trial court correctly denied the motion to suppress. "Ordinarily, evidence obtained as the result of an unlawful search [or seizure] is subject to suppression under the exclusionary rule." *Commonwealth v. Jones*, 267 Va. 532, 535 (2004). In determining whether evidence is derivative of the illegal act and, therefore, barred as "fruit of the poisonous tree," the question is "'whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quoting John M. Maguire, *Evidence of Guilt* 221 (1959)). We have held that "[t]he exclusionary rule does not . . . prohibit testimony describing the defendant's own illegal actions following an unlawful search or seizure." *Brown v. City of Danville*, 44 Va. App. 586, 599 (2004). "'[I]f a person engages in new and distinct criminal acts' during an allegedly unlawful police encounter, 'the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own

- 6 -

actions, is admissible." *Testa v. Commonwealth*, 55 Va. App. 275, 283 (2009) (quoting *Brown*, 44 Va. App. at 600).

Roane sought to suppress evidence of a new crime committed during an allegedly unlawful entry to the curtilage by the police. During the encounter with the police on the porch Roane was combative and refused to succumb to the officers' demands. He struggled with Detective Thompson, though he had no right to do so. When the police held Roane on the ground, he reached into his waistband and pulled out a gun, demonstrating an attempt to use the gun during his altercation with the officer. Thus, the gun was discovered because of a new and distinct criminal act of brandishing a firearm, not the result of an allegedly illegal detention.

For these reasons, even assuming arguendo that the officers' conduct was unlawful, the exclusionary rule did not apply to the firearm the police seized from Roane and the trial court did not err in denying the motion to suppress.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*